FILED
United States Court of Appeals
Tenth Circuit

May 6, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellant/
        Cross-Appellee,

    v.

GONZALO MUÑOZ-NAVA,

        Defendant - Appellee/
        Cross-Appellant.

Nos. 06-2247 and 06-2254

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-05-99-MV)**

David N. Williams, Assistant United States Attorney (Larry Gomez, Acting United States Attorney, and David C. Iglesias, former United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellant/Cross-Appellee.

Margaret A. Katze, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellee/Cross-Appellant.

Before **BRISCOE**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. Introduction

Gonzalo Muñoz-Nava pleaded guilty to one count of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The district court sentenced Muñoz-Nava to one year and one day of imprisonment, one year of home confinement, and five years of supervised release. The government appeals the below-Guidelines sentence imposed by the district court, arguing the sentence was procedurally and substantively unreasonable. Muñoz-Nava cross-appeals the district court's denial of his motion to suppress evidence, alleging violations of the Fourth Amendment. Taking jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 3742(b), this court holds that probable cause supported Muñoz-Nava's detention and **affirms** the denial of his motion to suppress. Applying the deferential abuse-of-discretion standard of review articulated in *Gall v. United States*, 128 S. Ct. 586, 594 (2007), and *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007), this court **affirms** the sentence imposed by the district court.

## II. Background

### A. *Encounter at the Bus Station*

Muñoz-Nava traveled by bus from El Paso, Texas to Albuquerque, New Mexico. As he departed the bus, Muñoz-Nava was observed by Agent Jarrell Perry of the Drug Enforcement Administration (DEA). Perry approached Muñoz-Nava, identified himself, and asked to speak with him. Muñoz-Nava agreed. In

response to questioning, Muñoz-Nava told Perry he lived in El Paso and was visiting his parents in Albuquerque. His only luggage was a shopping bag. With Muñoz-Nava's permission, Perry searched the bag, revealing a pair of cowboy boots, house slippers, a sweatshirt and a United States Naturalization Certificate.

Perry testified at the suppression hearing that he found it suspicious Muñoz-Nava carried no toiletries. Perry had previously seized narcotics hidden in shoes. Like Muñoz-Nava, those suspects traveled with almost no luggage other than a change of shoes. Perry further testified he was suspicious of the cowboy boots Muñoz-Nava was wearing because they looked "ballooned up" as if they were too small or there was something underneath pushing up on the top of the boots. Perry testified he had previously seized twenty pairs of boots abandoned in Los Lunas, New Mexico, with the same alligator, thin-skinned scales as Muñoz-Nava's boots. The abandoned boots had false compartments in the sole. In addition, Perry had made eight previous seizures of heroin from the shoes of bus passengers traveling from El Paso.

Perry asked Muñoz-Nava for consent to search the cowboy boots he was wearing. Muñoz-Nava removed his boots and handed them to Perry. Perry's inspection revealed the bottom of the boots had a distinct bulge and the boots were heavier than usual. There was also glue in the inner sole of the boots and the odor of fresh glue. The bottom of the boots were entirely covered by a fresh black dressing. In Perry's previous seizures, the footwear involved was heavier

than usual and smelled of fresh glue. In addition, Muñoz-Nava's boots were the same black, size ten, "Star" brand boots as those seized in Los Lunas. Muñoz-Nava told Perry the boots were purchased one month earlier in Mexico, but the soles indicated they had received little wear.

Perry requested permission to cut open the boots. Muñoz-Nava refused, but consented to a dog sniff of the boots. Perry requested assistance from Task Force Officer Greg Rees, a certified narcotics canine handler assigned to the DEA. While waiting for Rees, Muñoz-Nava's father arrived at the bus station to pick up his son. Upon Rees' arrival, he proceeded to have the dog sniff the boots. Although Rees conducted sniffs in two locations, the dog did not fully alert to the smell of narcotics. The dog did exhibit characteristics indicating it detected an odor of illegal narcotics, but could not locate the source of the odor.[1] Rees testified he believed the dog's difficulty in locating the source of the odor was due in part to the windy conditions at both locations. Perry then asked Muñoz-Nava why the boots were so heavy. Muñoz-Nava responded that he intentionally bought heavy boots for exercise when walking.

---

[1]Rees testified that the dog exhibits certain characteristics indicating it is beginning to detect the smell of narcotics. These characteristics include turning its head back, backtracking, and breathing more deeply. Rees explained that this behavior change occurs prior to an actual alert, which only occurs when the dog has detected the source of the odor. During an alert, the dog bites, paws, or scratches the source of the odor. Rees explained that the dog's behavior during this sniff meant that it smelled an odor of narcotics, but could not pinpoint the location of the narcotics.

Perry informed Muñoz-Nava the boots were being detained while he obtained a warrant to search the soles of the boots for narcotics. Muñoz-Nava was also told that although he was not under arrest, he was not free to leave. Muñoz-Nava was handcuffed and taken to the DEA office where he was placed in a holding cell. At the DEA office, Rees' dog was again deployed and alerted to the boots. After the alert, Perry obtained a search warrant for the boots. The search revealed 770.8 grams of heroin in the soles of the boots.[2]

Muñoz-Nava waived his *Miranda* rights. He told Perry he was recruited by a man from Mexico to transport the boots and he knew the boots contained drugs. He was to receive $1,000 for transporting the drugs. He also admitted this was the second time he had transported illegal drugs.

B. *Motion to Suppress*

Muñoz-Nava was indicted for possession with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). He moved to suppress all statements and evidence obtained as a result of the detention of his person and his boots. He also argued that when he was transported from the bus station to the DEA office, he was arrested without probable cause in violation of the Fourth Amendment. After holding an evidentiary hearing, the district court denied the motion.

---

[2]The heroin was sixty-six percent pure. This is equivalent to 508.7 grams of actual heroin.

*C. Sentencing*

Muñoz-Nava entered into a conditional plea agreement, reserving the right to appeal the district court's denial of his motion to suppress. Pursuant to the plea agreement, the parties stipulated to a base offense level of thirty. The agreement stipulated Muñoz-Nava was entitled to a two-level reduction for acceptance of responsibility pursuant to Section 3E1.1(a) of the United States Sentencing Guidelines Manual (U.S.S.G.). Section 3E1.1(b) provides an additional one-level reduction for acceptance of responsibility when a defendant has timely notified the authorities of his intention to plead guilty. The plea agreement referenced this additional reduction, stipulating Muñoz-Nava retained "the right to argue for the third point for acceptance of responsibility." Previous versions of the Sentencing Guidelines allowed the court to grant the Section 3E1.1(b) reduction absent any action from the government. *See* U.S.S.G. § 3E1.1(b) (2002). Muñoz-Nava, however, was sentenced under the 2005 version of the sentencing Guidelines, which allows for a Section 3E1.1(b) decrease "upon motion of the government."

At the sentencing hearing and in his written objections, Muñoz-Nava disputed some of the presentence report's (PSR) conclusions.[3] He objected to the

---

[3]An earlier version of the PSR granted Muñoz-Nava a minor role adjustment and three points for acceptance of responsibility. The amended PSR concluded those adjustments were not warranted. Muñoz-Nava argued that the amended PSR was incorrect.

conclusion that he was not entitled to a minor role adjustment.  *See* U.S.S.G. § 1B1.3.  The PSR determined there was insufficient information to determine whether he played an aggravating or mitigating role in the offence, based in part on his admission he had transported drugs previously.  As a result, the PSR did not recommend a minor role adjustment.  U.S.S.G. § 1B1.3.  He also objected to the PSR's recommendation that he not receive the third point reduction for acceptance of responsibility under Section 3E1.1(b).  In addition, Muñoz-Nava argued his family circumstances were extraordinary and warranted a downward departure.  *See* U.S.S.G. § 5H1.6.  He cares for his eight-year-old son as a single father and for his elderly parents who have serious medical problems.  He also requested a downward departure based on his lack of knowledge of the type or quantity of drugs he was carrying.

Muñoz-Nava asked the district court for a variance pursuant to 18 U.S.C. § 3553(a).  In support of his request he pointed to his family circumstances and his extensive work history, including while released on bond.  He also claimed his history demonstrated there was an extremely high probability he would not commit any other offense.  He asked the court for a sentence of probation.

The government argued the PSR's recommendations were correct.  It maintained Muñoz-Nava was not a minor participant because he could not demonstrate he was less culpable than most other participants in the conspiracy.  The government also argued Muñoz-Nava was not entitled to a one-level

reduction under Section 3E1.1(b) because he did not timely inform the government of his intent to plead guilty. In its written response to Muñoz-Nava's objections to the PSR, the government erroneously quoted an out-of-date version of Section 3E1.1(b), which allowed for the one-point reduction without a motion by the government. During the sentencing hearing, the government informed the district court the government had not moved for the third point. It never argued, however, that a government motion was a necessary prerequisite for awarding the third point. The government also argued Muñoz-Nava's family circumstances were not sufficiently exceptional to justify a downward departure. The government requested that Muñoz-Nava be sentenced within the Guidelines range in order to promote sentencing uniformity, provide adequate deterrence of Muñoz-Nava's criminal conduct, and to protect the public from future crimes.

The district court noted the PSR calculated Muñoz-Nava's offense level at twenty-six and his criminal history category at I, which resulted in a recommended sentence of sixty-three to seventy-eight months. The district court granted the defendant's request for a two-level minor role downward adjustment. It also granted the third point for acceptance of responsibility pursuant to Section 3E1.1(b) because the government had not made any trial preparations at the time Muñoz-Nava informed it of his intent to plead guilty. It did not grant the defendant's requests for downward departures based on extraordinary family circumstances or lack of knowledge of drug type and quantity. The adjustments

granted resulted in an offense level of twenty-three with a Guidelines sentencing range of forty-six to fifty-seven months' imprisonment.

The district court concluded the Guidelines range was greater than necessary to comply with the purposes set out in 18 U.S.C. § 3553(a)(2). It determined that consideration of the sentencing factors in § 3553(a) warranted a downward variance. The court imposed a sentence with a prison term of one year and one day, home confinement of twelve months, and supervised released of five years.

At the sentencing hearing, the district court provided a lengthy statement on the record explaining its decision. In particular, the district court considered Muñoz-Nava's personal history and characteristics. 18 U.S.C. § 3553(a)(1). It looked to his long and consistent work history, community support, and lack of a felony criminal record, concluding "[t]he court has received a large number of letters from community members, family members, and from defendant's employers, in support of the defendant, and attesting to his responsibility, his work ethic. These letters indicate that this offense was highly out of character for this defendant." The district court also considered Muñoz-Nava's family circumstances. He was the primary caretaker and sole supporter of his eight-year-old son. In addition, he was the sole supporter of his ailing and elderly parents.

The district court found Muñoz-Nava was unlikely to reoffend. It explained, "[b]ased upon the defendant's history and character, it is very unlikely

that he will reoffend, and therefore, the public is not at risk. He is not a violent person, and he is committed to supporting his family by returning to his pattern of working hard at a legitimate job." It particularly noted Muñoz-Nava's exemplary record on pretrial release, stating "[f]or one year and a half, Mr. Muñoz has been complying with every single condition of release that we have. Unfortunately, that is rare."

The district court explained why it believed the sentence was appropriate, reflected the seriousness of the offense, and provided just punishment. 18 U.S.C. § 3553(a)(2)(A). The court stated,

> Mr. Muñoz committed a very serious offense. The drug that he was carrying, heroin, put him in a very high offense level. However, Mr. Muñoz is living the life that this Court, through all of its programs . . . attempt[s] to create what Mr. Muñoz is already performing.

> We try to [get] defendants, once they are released from custody . . . to live the type of life that Mr. Muñoz is living now. And that is, a life in which they are used to getting up in the morning to go to work, a life in which they are used to going home to their families, instead of out partying with their friend, a life in which they take their children and their loved ones to a doctor, a life in which they are committed to their families . . . .

> . . . .

> We can't do any better than that. All we can do now is punish.

Finally, the district court emphasized the seriousness of the non-custodial elements of Muñoz-Nava's sentence. It explained that the year of home confinement was designed to punish Muñoz-Nava, while permitting him to

-10-

provide support for his family. It stressed that while subject to home confinement Muñoz-Nava would only be released for work, taking his parents or his son to the doctor, or meeting with his probation officer. Other special conditions were imposed by the court for the duration of his supervised release, which the district court explained was the maximum supervised release sentence available. Muñoz-Nava is required to submit to urinalysis testing, may not enter any establishment where alcohol is the primary item for sale, must refrain from the use of all alcohol, is required to remain employed or participate in educational or vocational counseling, and must submit to searches of his person or property.

The government appeals the sentence imposed by the district court. Muñoz-Nava cross-appeals the district court's denial of his motion to suppress evidence.

## III. Constitutionality of Muñoz-Nava's Detention

Muñoz-Nava argues the district court erred in denying his pretrial motion to suppress evidence resulting from his transportation to the DEA office and the detention of his boots. When reviewing a district court's denial of a motion to suppress, this court accepts the factual findings of the district court unless they are clearly erroneous. *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). We consider the totality of the circumstances and view the evidence in the light most favorable to the government. *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999). The ultimate determination of reasonableness under the

-11-

Fourth Amendment, however, is a question of law reviewable *de novo*. *United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006). The defendant bears the burden of proving the challenged seizure violated the Fourth Amendment. *Long*, 176 F.3d at 1307.

Muñoz-Nava contends his transportation to the DEA office constituted a de facto arrest without probable cause. He also challenges the detention of his boots pending the issuance of the search warrant as unsupported by probable cause. The district court determined the transportation of Muñoz-Nava and the detention of his boots required probable cause and the government does not contest this determination. We therefore consider whether probable cause existed for the transportation of Muñoz-Nava to the DEA office and the detention of his boots. "An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Brooks*, 438 F.3d 1231, 1241 (10th Cir. 2006) (quotation omitted). "Probable cause to arrest does not require facts sufficient to establish guilt, but does require more than mere suspicion." *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998).

The district court concluded probable cause existed for the detention of Muñoz-Nava and his boots. It explained the behavior exhibited by the narcotics dog responding to an odor change, while insufficient to establish probable cause,

-12-

was a factor to consider in the totality of the circumstances. It gave credence to Rees' explanation that the conditions at the bus station made it difficult for the dog to locate the source of the odor, but the dog's behavior demonstrated that it smelled narcotics and it was trying to locate the source. The court considered the suspicious characteristics of the boots, including the bulge, the smell of fresh glue, the lack of wear, the excessive weight, the unusual black dressing, and the similarity to the boots with false compartments seized in Los Lunas. The court also considered Muñoz-Nava's lack of luggage and the second pair of boots he carried, which was a similar pattern to other individuals apprehended by Perry with narcotics in their footwear. It also gave weight to the defendant's unusual explanation for the excessive weight of the boots—that he purchased them for exercise while walking. It concluded these circumstances created more than a mere suspicion of criminal activity and would have led a reasonable person to believe the boots contained illegal drugs. We agree with the district court that the totality of the circumstances supports probable cause.

Muñoz-Nava argues that, in reaching its conclusion, the district court relied on facts unrelated to criminal activities and failed to give weight to facts indicating he was not involved in criminal activity. "Courts may not engage in a 'divide-and-conquer' analysis of facts to determine whether probable cause existed." *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004); *see also United States v. Arvizu*, 534 U.S. 266, 275 (2002). We may not look at the

-13-

factors in isolation, but instead must consider the totality of the circumstances to determine whether rational inferences can be drawn from the facts to support probable cause. *Valenzuela*, 365 F.3d at 897. In addition, simply because an activity has an innocent connotation does not mean that it is excluded from the court's totality of the circumstances analysis. *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983) ("[I]nnocent behavior frequently will provide the basis for a showing of probable cause . . . ."). Even if a factor "is not by itself proof of any illegal conduct and is quite consistent with innocent travel," it may still contribute to establishing probable cause. *United States v. Sokolow*, 490 U.S. 1, 9 (1989). Muñoz-Nava's contentions fail to establish the district court committed clear error in its factual findings or that the totality of the circumstances did not support a finding of probable cause.

Muñoz-Nava objects to the district court's mention of his travel from El Paso, which Perry knew to be a drug source city. Travel from a "drug source city" is "so broad as to be indicative of almost nothing." *United States v. Guerrero*, 472 F.3d 784, 787-88 (10th Cir. 2007). The district court placed little emphasis on this factor, however, and probable cause existed absent its inclusion in the analysis. Any error in the district court's consideration of this factor was harmless.

Muñoz-Nava claims his lack of luggage was not suspicious given that he was traveling to visit his parents. He also argues that when his father arrived to

pick him up, Perry's suspicions regarding his lack of luggage should have dissipated. These arguments, however, ask us to draw different inferences from the facts than the district court. "Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court." *Hunnicutt*, 135 F.3d at 1348. Given that Muñoz-Nava carried limited luggage with a change of boots, similar to other drug couriers Perry had apprehended, the inference drawn by the district court was not clearly erroneous.

Muñoz-Nava also asks this court to reject the district court's conclusion that the new appearance of his boots contradicted his statement that the boots were a month old. This inference was reasonable and we defer to the district court's drawing of "reasonable inferences and conclusions from the evidence." *Hunnicutt*, 135 F.3d at 1348. Muñoz-Nava also claims that his explanation of the boots' weight could have taken place after his arrest because Perry's testimony is unclear as to when Muñoz-Nava made that statement. We note that in his conditional plea agreement Muñoz-Nava admitted that he told Agent Perry he purchased heavy boots for exercise before Agent Perry detained him. This argument is therefore foreclosed.

Finally, Muñoz-Nava argues the district court failed to properly weigh the drug dog's failure to alert to the boots. He claims the failure to alert is positive evidence they contained no narcotics. This argument has no support. The

absence of a full alert does not negate probable cause when other circumstances support such a finding. *United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."). In this case the dog exhibited signs indicating it smelled narcotics, but could not locate the source. The district court determined that, absent a full alert, the dog's behavior was not sufficient to support probable cause,[4] but the behavior change could be considered in the totality of the circumstances. We agree. A behavior change alone would not constitute probable cause. *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993). This does not preclude the court's consideration of the behavior change, however, when determining whether all of the relevant evidence establishes probable cause. *United States v. Guzman*, 75 F.3d 1090, 1096 (6th Cir. 1996) (holding dog's interest in bag, in addition to other factors, established probable cause). The district court correctly considered the behavior change as one factor in establishing probable cause. Probable cause supported Muñoz-Nava's detention.

## IV. Reasonableness of Muñoz-Nava's Sentence

---

[4]It is well established that probable cause can be based on an alert by a trained dog. *United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997).

The government appeals the district court's sentence, challenging both the district court's calculation of the applicable Guidelines range and the reasonableness of the downward variance. Prior to the Supreme Court's decisions in *Gall*, 128 S. Ct. at 586 and *Kimbrough*, 128 S. Ct. at 558 this court, in some cases, mathematically calculated the extent of a variance from the Guidelines and applied different standards based on the extent of the sentence's deviation from the Guidelines. *See, e.g.*, *United States v. Hildreth*, 485 F.3d 1120, 1127-28 (10th Cir. 2007); *United States v. Valtierra-Rojas*, 468 F.3d 1235, 1239-40 (10th Cir. 2006). This approach has been explicitly invalidated by the Supreme Court's decision in *Gall*. 128 S. Ct. at 594-96 ("We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."); *see United States v. Smart*, No. 06-6120, 2008 WL 570804, at *5 (10th Cir. Mar. 4, 2008).

In *Gall*, the Court explained how sentencing in the district court should proceed. First, a district court must accurately calculate the applicable Guidelines range. *Gall*, 128 S. Ct. at 596. After considering the correct Guidelines range, the district court must then consider all of the § 3553(a) factors to determine the appropriate sentence. *Id*. The district court "must make an individualized assessment based on the facts presented." *Id*. at 597. If the district court determines that a sentence outside the Guidelines is most appropriate, it "must

-17-

consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*.

In reviewing a sentence on appeal, this court must first determine whether the sentence is procedurally reasonable. *Gall*, 128 S. Ct. at 597; *United States v. Todd*, 515 F.3d 1128, 1139 (10th Cir. 2008). We review the district court's legal conclusions regarding the Guidelines *de novo* and its factual findings for clear error. *Todd*, 515 F.3d at 1135. This court should next consider the sentence's substantive reasonableness utilizing the abuse-of-discretion standard. *Id*. A district court abuses its discretion when it renders a judgment that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Byrne*, 171 F.3d 1231, 1235-36 (10th Cir. 1999) (quotations omitted). We must consider the totality of the circumstances, including the extent of deviation from the Guidelines, but we may not apply a presumption of unreasonableness. *Gall*, 128 S. Ct. at 597. This court,

> may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Id*.; *see Smart*, 2008 WL 570804, at *7. With these principles in mind, we turn to Muñoz-Nava's sentence.

*A. Procedural Reasonableness*

In reviewing a sentencing court's decision, this court

-18-

must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall*, 128 S. Ct. at 597; *see also United States v. Kristl*, 437 F.3d 1050, 1054-55 (10th Cir. 2006) (establishing the same procedural reasonableness requirement pre-*Gall*); *Todd*, 515 F.3d at 1135 ("When a district court does err in calculating the applicable Guidelines range, we must remand for resentencing, whether or not the district court's chosen sentence is substantively reasonable, unless we are able to ascertain that the court's calculation error was harmless.").

The government contends the sentence imposed by the district court is procedurally unreasonable because the district court miscalculated the Guidelines. Specifically, it claims the district court erred when it awarded Muñoz-Nava a third point for acceptance of responsibility pursuant to Section 3E1.1(b) absent a motion by the government. U.S.S.G. § 3E1.1(b). The 2005 version of the Guidelines, which applied in Muñoz-Nava's case, allows for a one-level decrease only "upon motion of the government." *Id*.

It is undisputed the government never argued before the district court that a government motion was a necessary prerequisite for Section 3E1.1(b) application. Rather, the government argued the third point should not be granted because the defendant took six weeks to notify the government of his intent to plead guilty.

-19-

As a result, this court applies plain error review to the district court's failure to properly apply Section 3E1.1(b). Fed. R. Crim. P. 52(b); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (quotation omitted). Assuming the district court committed error that was plain, the government has not met its burden as to the fourth prong of the plain error test. A party who fails to raise an argument in the district court must demonstrate that permitting the error to stand would be particularly egregious and constitute a miscarriage of justice. *United States v. Dazey*, 403 F.3d 1147, 1178 (10th Cir. 2005). The government does not discuss the plain error test in its briefing and wholly fails to explain how this error meets these requirements. As a result, the government has not met its burden and we cannot conclude the district court plainly erred.

The government also claims the district court erred when it found that Muñoz-Nava was unaware of the type of drugs he was carrying. It argues this finding cannot support a variance because Muñoz-Nava must have known he was carrying heroin based on the weight of the boots, the $1,000 fee, and the previous incident of smuggling drugs. The government thus asks this court to draw inferences from these facts that are different from the inferences drawn by the district court. To do so, however, when the factual inferences are not clearly

-20-

erroneous would be inconsistent with the abuse-of-discretion standard dictated by

*Gall.* 128 S. Ct. at 597 ("The sentencing judge is in a superior position to find

facts and judge their import under § 3553(a) in the individual case." (quotation

omitted)). The record supports the district court's finding.[5] The government has

therefore failed to show Muñoz-Nava's sentence was procedurally unreasonable.

## B. *Substantive Reasonableness*

After calculating the Guidelines range, the district court determined the §

3553(a) factors justified a significant deviation from the Guidelines. The

government challenges the reasonableness of this variance.

The government contends the district court placed undue weight on Muñoz-

Nava's family circumstances, which were neither dramatic nor unusual. The

Guidelines disfavor the consideration of family ties and responsibilities. U.S.S.G.

§ 5H1.6. Under our pre-*Gall* precedent, consideration of family circumstances

were likewise disfavored in the § 3553(a) analysis because of the Guidelines.

*Hildreth*, 485 F.3d at 1129. *Gall*, however, indicates that factors disfavored by

---

[5]The PSR indicates Muñoz-Nava was recruited by drug dealers to smuggle the heroin and that he consistently maintained he was unaware of the drug type and quantity. There was no indication he was familiar enough with drug smuggling to calculate types and quantities based on his fee or the weight of his boots.

the Sentencing Commission may be relied on by the district court in fashioning an appropriate sentence.[6]  128 S. Ct. at 602.

The district court carefully examined Muñoz-Nava's specific family circumstances and found them to be extraordinary.  A sentencing judge has greater familiarity with the case and the defendant before it than this court or the Sentencing Commission and is therefore "in a superior position to find facts and judge their import under § 3553(a) in the individual case."  *Gall*, 128 S. Ct. at 597-98; *see also Kimbrough*, 128 S. Ct. at 574.  This court must recognize these institutional advantages and give due deference to the district court's § 3553(a) determinations.  *Gall*, 128 S. Ct. at 597.  The district court's conclusion that Muñoz-Nava's family circumstances were extraordinary was supported by the record and was a proper consideration.  As a result, we cannot say the district court's emphasis of that factor in fashioning its sentence was arbitrary, capricious, whimsical, or manifestly unreasonable.  *See Byrne*, 171 F.3d at 1236 (10th Cir. 1999).

---

[6]The youth of a defendant is also a sentencing factor disfavored by the Sentencing Commission.  U.S.S.G. § 5H1.1.  Nevertheless, in *Gall* the Court held the district court's significant emphasis on the age of the defendant was reasonable.  128 S. Ct. at 602 ("[I]t was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor . . . .").  Furthermore, *Kimbrough* indicates that a district court's "view that the Guidelines range fails properly to reflect § 3553(a) considerations" may be sufficient to justify a variance.  128 S. Ct. at 575 (quotation omitted).  A factor's disfavor by the Guidelines, therefore, no longer excludes it from consideration under § 3553(a).

The government also argues the district court placed too much weight on Muñoz-Nava's behavior during pre-trial release and his lack of a criminal record, while not considering that he admitted to police he smuggled drugs on a prior occasion. Muñoz-Nava's prior involvement in smuggling could have led a judge to conclude his offense warranted a longer sentence. The record, however, also supports the district court's finding that Muñoz-Nava had demonstrated he was unlikely to reoffend and was sufficiently deterred from future criminal activity. The court looked to his employment history, his many letters of support, and his behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary. While this court could conclude a different result was reasonable, it is not for us "to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable." *Id*. at 602. The district court did not abuse its discretion in reaching its conclusion.

The government asks us to discount the district court's imposition of a term of home confinement and supervised release. While not as severe as an equivalent custodial sentence, home confinement and supervised release substantially restrict the liberty of a defendant. *Gall*, 128 S. Ct. at 595. Here, Muñoz-Nava is also subject to special conditions imposed by the court. In considering the sentence as a whole we cannot ignore non-custodial components. *See id*. at 596. The imposition of home confinement and supervised release contributes to our conclusion that Muñoz-Nava's sentence is reasonable. The

-23-

lengthy term of supervised release requires Muñoz-Nava to continue his good behavior and ensures that he will suffer consequences if he departs from his current path. The district court chose to emphasize these non-custodial components of the sentence in response to the specific characteristics of Muñoz-Nava. This emphasis was not unreasonable.

This court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 128 S. Ct. at 597. The district court's decision was reasoned and reasonable and, as a result, we conclude the district court did not abuse its discretion in sentencing Muñoz-Nava.

## V. Conclusion

This court **affirms** the district court's denial of the defendant's motion to suppress evidence and **affirms** the sentence imposed by the district court.