UNITED STATES of America,
Plaintiff,

v.

Melissa Marie COX, Defendant.

4:16–cr–00197

United States District Court,
S.D. Iowa.

Signed 09/25/2017

Gerald B. Feuerhelm, Feuerhelm Law Office P.C., B. John Burns, III, Federal Public Defenders Office, Des Moines, IA, for Defendant.

Stephan Kenneth Bayens, Clifford D. Wendel, United States Attorney's Office, Des Moines, IA, for Plaintiff.

## SENTENCING MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, Judge

### I. INTRODUCTION

On September 19, 2017, this Court sentenced Defendant Melissa Marie Cox to a sixty-month term of probation. This memorandum explicates the Court's analysis and reasoning for the sentence.

This Court is tasked with crafting a "sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). In doing so, the Court must consider "the nature and circumstances of the offense and the

history and characteristics of the defendant." *Id.* § 3553(a)(1). The Court must also consider "the need for the sentence imposed," in that the sentence should "reflect the seriousness of the offense, ... promote respect for the law, and ... provide just punishment for the offense;" "afford adequate deterrence to criminal conduct;" "protect the public from further crimes of the defendant;" and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Id.* § 3553(a)(2). Along with these factors, the Court must consider the kinds of sentences available, including those advised by the Sentencing Commission. *Id.* § 3553(a)(3)–(5). Furthermore, the Court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" and assess "the need to provide restitution to any victims." *Id.* § 3553(a)(6), (7). Finally, because a term of imprisonment is available in this case, the Court must heed the statutory admonition "recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." *Id.* § 3582(a).

## II. FACTUAL BACKGROUND [1]

On December 1, 2016, Defendant was pulled over by local law enforcement in a traffic stop. The officers determined Defendant's driver's license was suspended and the passenger, Jacob Lathrop, Defendant's fiancée, had an active warrant for his arrest. The officers searched Defendant and discovered methamphetamine, two glass pipes, a butane torch, and $3375 in her purse. The officers also discovered a folding knife, two loaded magazines, and a soft weapons holster on Lathrop. The officers then searched Defendant's car and

found a .380 caliber pistol in the passenger-side glove compartment. Defendant and Lathrop were both taken into custody. Once at the jail, the officers searched Defendant again and found three more small bags of methamphetamine on Defendant's person. The total amount of methamphetamine seized from Defendant exceeded sixty grams.

On December 20, 2017, the Government filed a two-count indictment charging Defendant with one count of possession with intent to distribute methamphetamine and charging Lathrop with one count of felon in possession of a firearm. Clerk's No. 3. Subsequently, Defendant spoke with law enforcement officers and informed them that the vehicle she was driving when she was stopped was registered in her name but actually belonged to Lathrop. She further informed the officers the firearm seized during the search of the vehicle also belonged to Lathrop. Defendant admitted to the officers that, prior to being pulled over that day, she and Lathrop had engaged in a drug transaction in which Lathrop had sold methamphetamine to an unidentified male. She further informed the officers the methamphetamine found in her possession was left over from the drug transaction and the cash was the proceeds from the transaction. Defendant also informed the officers she had accompanied Lathrop to drug transactions on two or three separate occasions previously. Defendant informed the officers she had seen another individual deliver large quantities of methamphetamine to Lathrop at Defendant's home and Lathrop gave that individual methamphetamine as payment for the delivery. Ultimately, Defendant was found to be responsible for 907.2 grams of methamphetamine mixture.

---

1. These facts are derived from the Pre–Sentence Investigation Report and were not con-

tested by either party at sentencing.

On April 17, 2017, Defendant pleaded guilty to the charge of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), a Class C felony. *See* Clerk's No. 52. On May 12, 2017, the Court accepted Defendant's plea and adjudicated her guilty. Clerk's No. 57.

## III. ANALYSIS

It now falls to this Court to fashion a sentence for Defendant that is "sufficient, but not greater than necessary." *Id.* § 3553(a). As noted above, § 3553(a) delineates a number of factors courts must consider when determining an appropriate sentence. *Id.* Those factors include pragmatic concerns, such as: the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the U.S. Sentencing Commission's recommended sentence, expressed through its advisory Sentencing Guidelines ("Guidelines" or "USSG"), and pertinent policy statements; the need to avoid unwarranted sentencing disparities "among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution to any victims." *Id.* § 3553(a)(1), (3)–(7). The factors also include the aforementioned policy goals: reflecting the seriousness of the offense; promoting respect for the law; providing just punishment for the offense; adequately deterring criminal conduct; protecting the public from further crimes of the defendant; and providing the defendant with needed care, training, or treatment. *Id.* § 3553(a)(2).

When imposing a sentence, this Court is not bound by the Sentencing Guidelines, but "must consult those Guidelines and take them into account." *United States v. Booker*, 543 U.S. 220, 264, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The U.S. Supreme Court has instructed district courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Then, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should ... consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.*

At the sentencing hearing, the parties stipulated to a total offense level of twenty-three and a criminal history category of one.[2] The parties agreed the Guidelines recommended sentence range is forty-six to fifty-seven months' imprisonment followed by one to three years of supervised release and a fine between $20,000 and $1,000,000. USSG §§ 5A, 5D1.2, 5E1.2(c)(4). Defendant requested a variance from the Guidelines range under § 3553(a), based in part upon her difficult childhood, her conduct while on pre-trial release, and her family circumstances. The Government did not object.

Defendant has asked this Court to impose only a sentence of probation. *See* 18 U.S.C. § 3561(a). The Government has recommended a sentence within the Guidelines range but conceded at the hearing that circumstances exist that may warrant a variance in this case. After carefully

---

**2.** Due to the quantity of drugs attributed to Defendant, she is subject to a base offense level of thirty under the Guidelines. However, because Defendant was determined to be the least culpable in the instant offense, readily accepted responsibility for her role in the offense, was eligible for the "safety valve" under USSG § 5C1.2, and cooperated with law enforcement officials, she qualified for several downward adjustments to reach a total offense level of twenty-three. Furthermore, Defendant has only two prior criminal convictions related to driving offenses, and thus, has a criminal history score of zero—or a criminal history category of one.

considering the § 3553(a) factors, the Court grants Defendant's request for a variance and imposes a sentence of probation for the following reasons.

Congress has directed sentencing courts to consider "the nature and circumstances of the offense" as well as "the history and characteristics of the defendant" when imposing a sentence. 18 U.S.C. § 3553(a)(1). Several federal appellate courts have held sentencing courts may consider a defendant's family circumstances when analyzing the factors of § 3553(a).[3] *See, e.g.*, *United States v. Williams*, 505 Fed.Appx. 426, 429 (6th Cir. 2012) (noting that § 3553(a)(1) allows a sentencing court to consider a defendant's family circumstances as one of the defendant's characteristics but concluding the defendant's family circumstances were not so unusual as to warrant a variance); *United States v. Underwood*, 639 F.3d 1111, 1114 (8th Cir. 2011) (examining whether a "district court committed a procedural error by failing to consider [a defendant's] family circumstances as a relevant factor under section 3553(a)" and concluding that, although the district court did not seem to view family responsibilities as a factor to be considered in its section 3553(a) analysis, it did clearly consider the defendant's family circumstances in denying the requested variance). The U.S. Court of Appeals for the Tenth Circuit has noted that prior to *Gall*, a sentencing court's consideration of family circumstances was also "disfavored in the § 3553(a) analysis." *United States v. Munoz–Nava*, 524 F.3d 1137, 1148 (10th Cir. 2008). However, since *Gall*, a sentencing

court may rely on these factors in crafting an appropriate sentence. *Id.*

Indeed, in *Munoz–Nava*, the Tenth Circuit affirmed the district court's careful examination of the defendant's family circumstances in determining a variance was warranted under § 3553(a). *Id.* The sentencing court had imposed a prison term of one year and one day, home confinement of twelve months, and five years of supervised release—a significant deviation from the calculated Guidelines range of forty-six to fifty-seven months' imprisonment. *Id.* at 1142. And in *United States v. Lehmann*, 513 F.3d 805, 809 (8th Cir. 2008), the Eighth Circuit affirmed the district court's imposition of a sentence of probation, which substantially deviated from the advisory Guidelines range of thirty-seven to forty-six months' imprisonment, after concluding a variance under § 3553(a) was warranted based on expert testimony that a prison term would negatively impact the emotional development of the defendant's young son.

Furthermore, there is compelling scholarship that demonstrates the need for courts to consider a defendant's family circumstances at sentencing. *See* Emily W. Andersen, Note, *"Not Ordinarily Relevant": Bringing Family Responsibilities to the Federal Sentencing Table*, 56 B.C. L. Rev. 1501 (2015) [hereinafter *Family Responsibilities in Sentencing* ] (arguing the Guidelines should be amended to encourage courts to consider a defendant's family circumstances when determining a sentencing); Chesa Boudin, *Children of Incarcerated Parents: The Child's Consti-*

---

**3.** The Guidelines permit a sentencing court to consider a defendant's family ties and responsibilities when determining whether a motion for departure should be granted; however, such consideration is discouraged. *See* USSG § 5H1.6 (Policy Statement) ("In sentencing a defendant convicted of an offense ...., family ties and responsibilities are not ordinarily relevant in determining whether a departure

may be warranted."); *see also United States v. Munoz–Nava*, 524 F.3d 1137, 1148 ("The Guidelines disfavor the consideration of family ties and responsibilities." (citing USSG § 5H1.6)). But Defendant did not request a departure under USSG § 5H1.6. Instead, Defendant requested a variance pursuant to 18 U.S.C. § 3553(a).

*tutional Right to the Family Relationship*, 101 J. Crim. L. & Criminology 77 (2011) [hereinafter *The Child's Right to Family Relationships* ] (advocating for the needs and rights of minor children to be given more attention at sentencing). Studies have shown the families of inmates suffer significant negative consider a defendant's family circumstances in their sentencing calculations. Andersen, *Family Responsibilities in Sentencing*, 56 B.C. L. Rev. at 1502 (citing Comm. on Causes & Consequences of High Rates of Incarceration, Nat'l Research Council, *The Growth of Incarceration in the United States: Exploring Causes and Consequences* 6 (Jeremy Travis et al. eds., 2014), http://www.nap.edu/catalog/18613/the-growth-of-incarceration-in-the-united-states-exploring-causes). And the negative consequences are wide-spread. The trauma a child experiences when his or her parent is imprisoned can delay the child's emotional and mental development and lead to long-lasting mental health issues. *Id.* at 1518. The child may also suffer from decreased performance at school, economic hardship, or may be forced to enter the foster care system, where his or her legal relationship with the parent could be terminated.[4] *Id.* One statistic shows that in mid-2007, at least 1.7 million children in the United States experienced this trauma by having at least one parent who was incarcerated in prison. Boudin, *The Child's Right to Family Relationships*, 101 J. Crim. L. & Criminology at 81. This figure does not include those who were released from prison earlier in the year or those who entered prison after, or the number of parents incarcerated in local jails. *Id.* These detrimental effects are felt disproportionately in minority communities. *Id.* In fact, more than seventy percent of children who have

parents in prison are children of color. *Id.*; *see also* Andersen, *Family Responsibilities in Sentencing*, 56 B.C. L. Rev. at 1520 (noting that "[b]lack children are 7.5 times more likely to have a parent in prison than white children" while "Hispanic children are 2.7 times more likely").

Thus, this Court concludes it must consider Defendant's family circumstances in its § 3553(a) analysis—if only for the benefit of Defendant's children. *See* Boudin, *The Child's Right to Family Relationships*, 101 J. Crim. L. & Criminology at 105, 109 (arguing children have a "First Amendment right to freedom of association with their incarcerated parents" and "a due process liberty interest in the maintenance of their family integrity"). However, this Court does not suggest every defendant with children should be given a more lenient sentence. Indeed, scholars acknowledge that, in some instances, separating a child from an abusive parent may be beneficial to the child. *See* Andersen, *Family Responsibilities in Sentencing*, 56 B.C. L. Rev. at 1520 n.108 (citing Sara Wakefield & Christopher Wildeman, *Children of the Prison Boom: Mass Incarceration and the Future of American Inequality* 95 (2014); Sarah Abramowicz, *Rethinking Parental Incarceration*, 82 U. Colo. L. Rev. 793, 812 (2011)). To that end, this Court concludes that, in fashioning a "sentence sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), the welfare of a defendant's children must be fully considered. Whether that consideration is mitigating or aggravating depends entirely upon the factual circumstances of each case. But courts cannot simply ignore the best interests of a defendant's family and the defendant's responsibilities to his or her family. Children of defendants are as much stakeholders in a sentence as the

---

4. As expressed from the bench at Defendant's sentencing hearing, the Court takes judicial notice of the fact that no child-caretaker rela-

tionship can replace that of one between a child and his or her natural parent.

victims, the public, and the defendants themselves.

In this case, Defendant presented evidence that she has three children, two of whom are minors and currently live with her. The Court finds these two children would suffer serious harm if Defendant were to be imprisoned, and there would be no appreciable benefit to the Government, the public, or any other interested party.

The Court further considers these additional facts relevant to its § 3553(a) analysis. Defendant grew up in a difficult home environment where she suffered abuse at the hands of her drug-addicted mother's paramours. She began using illegal substances at a young age. Despite her lengthy drug addiction, Defendant has had minimal contact with the criminal justice system. Her only two prior criminal convictions are for driving offenses. She has no history of violence. Since her arrest for the instant offense, Defendant has fully complied with all the conditions of her pre-trial release. She has successfully completed substance abuse treatment and has had no positive drug tests—in fact, a treatment provider noted she has "gone above and beyond all expectations." She has maintained full-time employment and her current manager expressed a desire for her "to take on more of a leadership role within [the] company" because "she has the right work ethic, temperament, reliability and trustworthiness of someone [he] would place more responsibility upon." In other words, Defendant's performance on pre-trial release has been exemplary, and this Court commends her hard work and dedication to lead a better life without an addiction to drugs. Defendant also has the support of many family members, friends, and coworkers, as evidenced by the numerous letters the Court received attesting to her good character.

Given Defendant's family circumstances, history, and other characteristics; her role in the offense; the nonviolent nature of the offense conduct; and her conduct while on pre-trial release; the Court finds there is no need to protect the public from further crimes of Defendant or to provide Defendant with further treatment or training that must be obtained while imprisoned. Accordingly, the Court determines a sentence of five years of probation is the appropriate sentence in this case.

### IV. CONCLUSION

After considering all the statutory factors, the Court finds a sixty-month term of probation is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Defendant must comply with all terms of probation listed in the judgment entered in this case and must also pay the required criminal assessment penalty of $100.00. *See* Clerk's No. 83. The Court declines to order any additional fine or penalty.

IT IS SO ORDERED.

