FILED
United States Court of Appeals
Tenth Circuit

February 16, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MATTHEW JOHN JONES,

    Defendant - Appellant.

No. 23-6021
(D.C. No. 5:22-CR-00178-SLP-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

After Matthew Jones pleaded guilty to transmitting a threat in interstate

commerce, the district court sentenced him to the statutory maximum of five years in

prison. Jones appeals, arguing that his sentence is substantively unreasonable.

Although Jones's sentence is two times higher than the top of his advisory sentencing

range under the United States Sentencing Guidelines (U.S.S.G. or the Guidelines),

the district court justified its decision to vary upward by considering the 18 U.S.C.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.
But it may be cited for its persuasive value. See Fed. R. App. P. 32.1(a); 10th Cir.
R. 32.1(A).

§ 3553(a) sentencing factors. Finding no abuse of discretion in the district court's balancing of those factors, we affirm.

## Background

Jones's conviction arose from text messages in which he threatened to kill the CEO of his former employer. In March 2021, Jones lost his job as a nurse practitioner at the Absentee Shawnee Tribal Health System after other employees complained to the CEO that Jones sexually harassed them. The CEO also reported the complaints to the Air National Guard, to which both he and Jones belonged, and later testified against Jones during the military's investigation into similar misconduct allegations. Jones was ultimately discharged from the National Guard. Jones blamed the CEO for both the termination of his employment and his military discharge.

Then, one early morning in April 2022, while heavily intoxicated, Jones began texting a woman with whom he had worked at the tribal health system. During the exchange, Jones expressed resentment toward the CEO and described a plan to kill him by shooting him from a great distance using a sound-suppressed rifle. Alarmed by Jones's text messages, the woman reported him to authorities. Based on that report, law enforcement obtained search and arrest warrants for Jones. A search of his home revealed a large collection of firearms, a homemade sound suppressor, and various pieces of tactical gear, including a type of camouflage suit used by snipers.

Jones later pleaded guilty to transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. § 875(c). Jones's presentence investigation report (PSR) calculated a total offense level of 15 and a criminal-

history category of III, which set his Guidelines range at 24 to 30 months. This calculation included a six-level enhancement under U.S.S.G. § 2A6.1(b)(1) because Jones's "offense involved . . . conduct evidencing an intent to carry out [his] threat." The parties did not object to the PSR's calculations.

At sentencing, Jones asked the district court to impose a sentence at or below the bottom of his Guidelines range. The government, on the other hand, moved for an upward variance and requested a sentence between 48 and 60 months, arguing that such a sentence was proper in light of the 18 U.S.C. § 3553(a) factors. The district court agreed with the government and imposed the statutory maximum sentence of five years in prison, plus two years of supervised release. *See* § 875(c).

Jones appeals.

### Analysis

Jones argues that his sentence is substantively unreasonable. When faced with a substantive-reasonableness challenge, "we review the length of the sentence for an abuse of discretion." *United States v. McCrary*, 43 F.4th 1239, 1249 (10th Cir. 2022). Under this standard, we ask "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in . . . § 3553(a)." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008) (quoting *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)). Although a sentence within the Guidelines range creates a presumption of reasonableness, no such presumption applies when, as here, the district court varies upward. *See id.* at 1216. But we must nevertheless "give due deference to the district court's decision that the

3

§ 3553(a) factors, on [the] whole, justify the extent of the variance." *Id.* (quoting *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008)). "For these reasons, we uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018).

Here, the district court specifically addressed the § 3553(a) factors, focusing on the nature and circumstances of Jones's offense, its seriousness, his history and characteristics, and the need to protect the public. *See* § 3553(a)(1)–(2), (c). It emphasized that Jones not only sent text messages to a third party threatening to kill the victim, but also had both a plan and the necessary equipment to carry out that plan. The district court also discussed the victim's impact statement, noting that the victim "was clearly and understandably very concerned" by the threats and surmising that Jones's insistence that the threats were not serious likely rang hollow to the victim. R. vol. 3, 34. In addition, the district court said it "was alarmed that," during his allocution, Jones "found it necessary" to reference the victim's son and the son's place of employment, noting that such statements could be interpreted as a subtle threat.[1] *Id.* at 31. It further observed that Jones had a prior history of harassment and that he had been the subject of a protective order after he told the husband of a woman with whom he had an affair that he killed people for a living. The district

---

[1] During his allocution, Jones stated: "I took care of [the victim] and his son as their family doctor while I was at the clinic. I enjoyed his son a lot. He is . . . a great kid. And I hope he's still working at Home Depot, where I know he was working at . . . one point." R. vol. 3, 28.

4

court also noted that Jones's ongoing struggles with substance abuse exacerbated the risk that he might harm other people in the future. Although the district court acknowledged Jones's high degree of education, history of public service, and mental-health struggles, it concluded that "the significance of th[e] offense[, t]he need for punishment, and the need to protect the public from further crimes . . . significantly outweigh[ed] these other factors." *Id.* at 34. Based on all these considerations, the district court sentenced Jones to the statutory maximum of five years in prison.

Challenging the district court's analysis, Jones first suggests that his sentence is substantively unreasonable because it is two times longer than the top of his Guidelines range. But in assessing whether a sentence is substantively reasonable, we do not apply "a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall v. United States*, 552 U.S. 38, 47 (2007). Instead, the "keystone of our analysis" is "the adequacy of the [district] court's consideration and explanation of the § 3553(a) factors." *Barnes*, 890 F.3d at 916; *see also, e.g.*, *United States v. Worku*, 800 F.3d 1195, 1198, 1207–08 (10th Cir. 2015) (explaining that "a district court can vary from the [G]uidelines so long as it does not do so arbitrarily and capriciously" and affirming 22-year sentence as substantively reasonable even though top of defendant's Guidelines range was three years). Thus, that Jones's sentence is two times longer than the top of his Guidelines range does not, standing alone, establish that it is substantively unreasonable.

5

Seeming to recognize as much, Jones next argues that the district court abused its discretion by imposing the statutory maximum sentence because his threats were "implausibl[e]." Aplt. Br. 19. Contrary to Jones's contention, however, the district court did not predicate his sentence on the plausibility of his plan to shoot the victim. Instead, it expressly disclaimed this notion, stating: "I don't think the tactical viability of a plan makes any difference. I don't care whether or not you can ten-ring something at 500 meters with a suppressor on or not." R. vol. 3, 33. What mattered to the district court was that Jones had developed a plan and possessed the equipment to carry it out, regardless of whether his plan was particularly viable. And it is entirely appropriate—indeed, required—that the district court consider the nature and circumstances of the offense, as well as its seriousness, in fashioning a sentence. *See* § 3553(a)(1), (2)(A).

Nevertheless, Jones argues that it was improper for the district court to afford significant weight to the seriousness of the offense because his Guidelines range already took this factor into account. In support, Jones points to the six-level enhancement he received because "the offense involved . . . conduct evidencing an intent to carry out [his] threat." § 2A6.1(b)(1). But this double-counting argument is unavailing. Our precedent makes clear that "[d]istrict courts have broad discretion to consider particular facts in fashioning a sentence under § 3553(a), even when those facts are already accounted for in the advisory [G]uidelines range." *United States v. Lente*, 759 F.3d 1149, 1169 (10th Cir. 2014) (first alteration in original) (quoting *United States v. Yanez-Rodriguez*, 555 F.3d 931, 946 (10th Cir. 2009)).

6

Jones next faults the district court for interpreting his statements at sentencing about the victim's son as a veiled threat. According to Jones, his statements instead reflected a "genuine concern for [the victim] and his family." Aplt Br. 20. But it is not clear from the record what weight, if any, the district court placed on those statements in deciding to vary upward. Although it expressed alarm that Jones would mention where the victim's son worked, it did not otherwise cite this fact when justifying its upward variance. And in any event, we must defer to both the district court's factual findings and any inferences it draws in making those findings unless they are clearly erroneous. *Munoz-Nava*, 524 F.3d at 1147; *see also Gall*, 552 U.S. at 51 ("The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts[,] and gains insights not conveyed by the record."). Here, the district court explained that it found Jones's decision to reference the son's place of employment concerning in light of the background and "context of this case." R. vol. 3, 31. Indeed, Jones had demonstrated a heightened awareness of the victim's family and their whereabouts when he described his murder plan over text. Against this backdrop, and recognizing that the district court had the exclusive opportunity to evaluate Jones's tone of voice and body language during the allocution, we cannot say it was clearly erroneous for the district court to interpret Jones's statements as a veiled threat. *See United States v. Gordon*, 710 F.3d 1124, 1138 n.17 (10th Cir. 2013) (noting that clear error review of factual findings requires "defendant to show that the findings are more than possibly

7

or even probably wrong but pellucidly so" (quoting *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011))).

Finally, Jones argues that the district court gave insufficient weight to his education and record of public service when considering his history and characteristics. But in so doing, he asks us to reweigh the sentencing factors and thus reaches beyond the scope of our review: we will "not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them," anew. *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008). "[A]s long as the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable, we must defer to that decision even if we would not have struck the same balance in the first instance." *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008). Here, after considering the § 3553(a) factors, the district court concluded that Jones's detailed and premediated plan to murder the victim, combined with his stockpile of tactical weaponry and history of harassment and substance abuse, presented a grave threat that warranted the imposition of the maximum sentence authorized by § 875(c). Given the district court's "cogent and reasonable explanation" for its upward variance, we conclude that the sentence it imposed did not "'exceed[] the bounds of permissible choice.'" *Barnes*, 890 F.3d at 915, 917 (quoting *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007)). We thus find no abuse of discretion and affirm.

**Conclusion**

Because the district court did not abuse its discretion in sentencing Jones to five years in prison, we affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge