FILED
United States Court of Appeals
Tenth Circuit

June 25, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

SCOTT JAMES HUCKINS,

Defendant - Appellee.

No. 07-3220

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS - WICHITA
(D.C. No. 06-CR-10245-JTM)

Submitted on the briefs:[*]

Eric F. Melgren, United States Attorney; Alan G. Metzer, Assistant United States
Attorney, Wichita, Kansas, for Plaintiff - Appellant.

Charles A. O'Hara, O'Hara & O'Hara, Wichita, Kansas, for Defendant -
Appellee.

Before **KELLY**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore
is ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Defendant-Appellee Scott James Huckins pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of criminal forfeiture, 18 U.S.C. § 2253(a)(3). Although the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") (2006) range was 78 to 97 months, the district court, after weighing the factors set forth in 18 U.S.C. § 3553(a), sentenced Mr. Huckins to 18 months' imprisonment and 3 years' supervised release, fined him $1,000, and required him to forfeit his computer equipment. The government appeals, arguing that it was substantively unreasonable for the district court to grant a downward variance. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b), and we affirm.

## Background

On April 6, 2005, agents of the Federal Bureau of Investigation went to Mr. Huckins's residence in Wichita, Kansas. Mr. Huckins was not home but his father was present. The agents informed Mr. Huckins's father that Mr. Huckins's credit card had been used to purchase a membership to a website that hosted child pornography. Mr. Huckins's father gave the agents verbal consent to search for child pornography on Mr. Huckins's computer, which was located in Mr.

Huckins's bedroom. Mr. Huckins was contacted by telephone and gave the agents verbal consent to search his computer.

The agents executed a "pre-search" computer utility program on Mr. Huckins's computer and uncovered images of child pornography. The images were of real children and had been shipped in interstate commerce via the internet. Mr. Huckins's computer was seized and sent to the Heart of America Regional Computer Forensics Laboratory for forensic examination. That examination uncovered images of child pornography, pictures of known child pornography victims, a file sharing program, and an internet history displaying child pornography sites visited.

Mr. Huckins was indicted for possession of child pornography and criminal forfeiture on November 14, 2006. He pleaded guilty to both charges by way of a plea agreement on March 7, 2007. Following Mr. Huckins's guilty plea, a presentence investigation report ("PSR") was prepared. The PSR calculated a total offense level of 28, which included a base offense level of 18 pursuant to U.S.S.G. § 2G2.2(a)(1), a 2-level enhancement pursuant to § 2G2.2(b)(2) because the offense involved material containing prepubescent minors or minors who had not attained the age of 12 years, a 4-level enhancement pursuant to § 2G2.2(b)(4) because the offense involved material portraying sadistic or masochistic conduct, a 2-level enhancement pursuant to § 2G2.2(b)(6) because a computer or

interactive computer service was used for the possession, transmission, receipt or distribution of the material, a 5-level enhancement pursuant to § 2G2.2(b)(7)(D) because the offense involved over 600 images containing child pornography, including 14 videos, a 2-level reduction pursuant to § 3E1.1(a) for acceptance of responsibility, and a 1-level reduction pursuant to § 3E1.1(b) for entering a timely guilty plea. The offense level of 28, together with a criminal history category of I, resulted in a Guidelines imprisonment range of 78 to 97 months.

Mr. Huckins initially objected to three of the PSR's offense-level enhancements but later withdrew those objections. He also filed a motion for a downward variance pursuant to 18 U.S.C. § 3553(a). In his motion, Mr. Huckins argued that, among other things, he was 20 years old at the time of the crime and 22 at the time of sentencing, he had virtually no criminal record, had been employed, cooperated with law enforcement and consented to the search, was not indicted until a year and a half after the FBI seized his computer, he pleaded guilty, immediately sought psychotherapy once charged, and made efforts to correct his life, such as becoming involved in relationships and stopping excessive drinking. He also noted that, as a result of pleading guilty, he will be a registered sex offender for the remainder of his life.

The government opposed Mr. Huckins's motion, arguing that a sentence within the Guidelines range was appropriate. The government explained that Mr.

Huckins's age was irrelevant, his cooperation was already accounted for in the 3-level reduction for his acceptance of responsibility and timely guilty plea, and he did not seek medical treatment until after his unlawful activity was discovered.

At Mr. Huckins's sentencing, the district court initially indicated that it intended to impose a sentence of 78 months, which represented the low end of the Guidelines range, but then expressed concerns about the length of such a sentence. Although the court recognized the nature and seriousness of the offense, it found Mr. Huckins's case distinguishable from other child pornography cases over which it had previously presided, and stated that it was considering a downward variance to a range of 36 to 48 months. The government advised the court that it would not oppose a downward variance down to 48 months. Aplt. App. at 73.

The parties then presented their arguments, and Mr. Huckins made his allocution. After, the court responded that it was not ready to impose sentence. The court discussed that it was troubled by this case because Mr. Huckins did not fit the characteristics of the typical defendant who possesses child pornography and that he was not prosecuted until a year and a half after the seizure of his computer. The court also noted that Mr. Huckins was very cooperative with law enforcement, and it referenced the letters it received on behalf of Mr. Huckins. While recognizing the nature and seriousness of the offense, the court explained

that "the history and circumstances of the defendant seem to me to weigh every bit as heavily as the nature and seriousness of the offense. I think that the sentence, I would hope, if it's to be a just sentence, has to fit not only the crime but the offender." Id. at 67. With that, the court continued sentencing for one week.

When sentencing resumed, the court announced it intended to impose a sentence of 18 months. The court began its explanation of Mr. Huckins's sentence by indicating that it took a significant amount of time in deciding what constituted an appropriate sentence in this case. As a starting point, the court discussed that it recognized the nature and seriousness of possessing child pornography as well as the serious penalties Congress has imposed for that offense. The court expressed that it did not want to "downplay the significance of the problem or Congressional action in anyway." Id. at 69. Indeed, the court expressly rejected a probationary sentence "given Congress's clear statement reflecting the attitudes of the people of this country with respect to possession of child pornography." Id. at 71. In so doing, the court noted that

> there are over 100 children that are involved in these videos and stills
> who have been victimized and whose lives have been wrecked
> beyond almost anyone's ability to find redemption. And that is what
> Congress was concerned about in enacting the penalty provisions for
> this law. The idea is if you can dry up the market, then there will not
> be a need for the product, and perhaps the industry will dry up.
> Whether that's a wise course or not is not my call to make. It is
> Congress's, and it is what it's done. I think that to put Mr. Huckins

on probation, given the offense, would minimize the significance of the offense itself. So I don't think that's appropriate.

Id. at 71-72.

However, the court explained that once it got "past the offense itself and the penalties that are possible, [i.e.,] the guidelines," and examined the "individual and the type of offense that he actually committed," a different kind of picture emerged. Id. at 69. The court stated that Mr. Huckins had no real criminal record; he was going through a difficult period in his life and experiencing significant depression at the time he committed the offense; the offense was committed over a short period of time and there had been no repeat of the offense; during the time that the government waited to prosecute him, he obtained licenses for employment and, through his own and his family's efforts, made significant improvements in his life; he did not occupy a position of trust with children; and he displayed exceptional responsibility and remorse for his actions. Balancing these findings against the seriousness of the offense, the court imposed a sentence of 18 months' imprisonment followed by 3 years' supervised release.

Final judgment was entered on July 2, 2007, and the government timely appealed. On appeal, the government argues that the district court's findings did not justify granting Mr. Huckins's request for a downward variance and that the sentence is substantively unreasonable.

Discussion

After United States v. Booker, 543 U.S. 220 (2005), we review the reasonableness of sentencing decisions, "whether inside, just outside, or significantly outside the Guidelines range[,] under a deferential abuse-of-discretion standard." Gall v. United States, 128 S. Ct. 586, 591, 594 (2007). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Muñoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008) (internal quotations omitted). Reasonableness review is comprised of a procedural component and a substantive component. United States v. Smart, 518 F.3d 800, 803 (10th Cir. 2008). Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the sentence. Gall, 128 S. Ct. at 597. Relevant here,[1] substantive reasonableness addresses "whether the length of the sentence is reasonable given all the circumstances of the case in light of the

---

[1] Neither the government nor Mr. Huckins claims procedural error, and we find none. The district court correctly calculated the applicable Guidelines range and properly considered the § 3553(a) factors.

factors set forth in 18 U.S.C. § 3553(a)." United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008) (internal quotations omitted).

Although sentences imposed within the correctly calculated Guidelines range may be presumed reasonable on appeal, sentences imposed outside the Guidelines range may not be presumed unreasonable. Gall, 128 S. Ct. at 597. In reviewing a district court's decision to deviate from the Guidelines, we "consider the extent of the deviation" but give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. We cannot reverse simply because we might have reasonably arrived at a different sentence. Id. We afford the district court this level of deference because it has an unquestionable institutional advantage over an appellate court to consider whether the facts of an individual case justify a variance under § 3553(a). Id. at 597-98.

The district court is required to provide a "specific reason" for deviating from the Guidelines. 18 U.S.C. § 3553(c)(2); United States v. Angel-Guzman, 506 F.3d 1007, 1016 (10th Cir. 2007). An adequate explanation of the chosen sentence allows for meaningful appellate review and promotes the perception of fair sentencing. Gall, 128 S. Ct. at 597. "[A] district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is

appropriate in a particular case with sufficient justifications." Id. at 594.

Although "a major departure should be supported by a more significant justification than a minor one," id. at 597, we no longer require that "extraordinary" circumstances justify a sentence outside the Guidelines range nor do we mathematically calculate the percentage variance from the Guidelines and use that percentage "as the standard for determining the strength of the justifications required," id. at 595; see Smart, 518 F.3d at 807. As noted, the parties do not claim the district court procedurally erred in its explanation, so we proceed to qualitatively assess the substantive reasonableness of the sentence under the totality of the circumstances. Gall, 128 S. Ct. at 597.

After calculating the Guidelines range of 78 to 97 months, the district court initially indicated that the § 3553(a) factors justified a downward variance to a range of 36 to 48 months, but ultimately imposed a sentence of 18 months. The government challenges the substantive reasonableness of this sentence, arguing that the district court's justification for granting a downward variance of 60 to 79 months from the Guidelines range was not sufficiently compelling or supported by extraordinary facts. We disagree.

As an initial matter, the government conceded to the district court that some variance was appropriate. At sentencing, the government advised the court that it was unopposed to a downward variance to 48 months. Aplt. App. at 73.

Therefore, despite the government's argument on appeal that a variance of 60 to 79 months is inappropriate, a variance of 30 months separated the parties' positions before the district court.

In addition, it is evident from the government's argument that the government filed its opening brief in this case before the United States Supreme Court decided Gall v. United States, 128 S. Ct. 586 (2007), which we are bound to apply. Notwithstanding having the opportunity to do so, the government did not file a reply brief, request supplemental briefing, or file a Rule 28(j) letter after Gall was decided. See Fed. R. App. P. 28(j) (party may file letter to court addressing pertinent and significant authority that come to party's attention after briefs have been filed). The government primarily relies on United States v. Cage, 451 F.3d 585, 594-96 (10th Cir. 2006), for the proposition that the district court's justification was not sufficiently compelling or dramatic, or supported by extraordinary facts to warrant the extreme downward variance. See Aplt. Br. at 7-9. After Gall, this standard of review no longer applies, and consequently, Cage does not control this case. See Smart, 518 F.3d at 808; see also United States v. Akers, 261 F. App'x 110, 114 (10th Cir. 2008) (unpublished) (explaining that Cage has been overruled by Gall).

The government also argues that it was inappropriate for the district court to justify its variance, in part, on the fact that Mr. Huckins had no real criminal

record since he had already been placed in a criminal history category of I. Even if this were improper, we note that the court weighed a number of factors in addition to Mr. Huckins's lack of a criminal record to arrive at its sentencing decision. In any event, the court's consideration of this factor was appropriate. Although the Guidelines discourage granting a downward departure based upon criminal history when the defendant has been placed in a criminal history category of I, U.S.S.G. § 4A1.3(b)(2)(A), this is a not a departure case, it is a variance case. See United States v. Atencio, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007) (explaining deviation from recommended Guidelines range through application of Chapters 4 or 5 of Guidelines is a "departure" while deviation through application of § 3553(a) factors is a "variance"). And, after Gall and Kimbrough, a factor's disfavor by the Guidelines no longer excludes it from consideration under § 3553(a). Muñoz-Nava, 524 F.3d at 1148 & n.6; see Gall, 128 S. Ct. at 602; Kimbrough v. United States, 128 S. Ct. 558, 575 (2007). Therefore, a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis. See Muñoz-Nava, 524 F.3d at 1142, 1148.

Applying the appropriate deferential standard of review announced in Gall to this case, we hold that the district court did not abuse its discretion in granting the downward variance and that Mr. Huckins's sentence was substantively

reasonable. To reach its sentencing decision, the district court took significant time to carefully balance the nature and seriousness of the offense, the need for deterrence and the need to protect the public, with the history and characteristics of the defendant. In so doing, the court clearly appreciated the nature and seriousness of the offense, discussing Congress's decision to enhance penalties associated with possession of child pornography, and expressly rejecting a probationary sentence. We too recognize the importance of these factors and the need for deterrence. See 18 U.S.C. § 3553(a)(2); United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), cert. denied, 128 S. Ct. 666 (2007) ("The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced."). However, as the district court correctly understood, the history and characteristics of the defendant must be factored into the final sentencing calculus. See 18 U.S.C. § 3553(a)(1).

Here, the court considered a number of factors pertaining to the history and characteristics of Mr. Huckins that counterbalanced the nature and seriousness of the offense, namely that he (1) had no real criminal record prior to these offenses; (2) was going through a difficult time with significant depression when he committed the offenses; (3) committed the offenses over a short period of time; (4) has not repeated the offenses—the activity stopped without legal intervention;

- 13 -

(5) obtained licenses for employment and maintained steady employment prior to being charged; (6) has consistently improved his life through his own efforts and those of his family; (7) did not occupy a position of trust with children; and (8) has demonstrated repeated remorse and an exceptional understanding of how his conduct has affected his life and the lives of his family. Aplt. App. at 69-72. The court also considered the many letters of support it received on behalf of Mr. Huckins.

This approach is clearly consistent with Gall's instruction that district courts should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall, 128 S. Ct. at 598 (internal quotations omitted). It is also consistent with approaches approved by our sister circuits in similar post-Gall cases, some of which involved larger downward variances. See, e.g., United States v. Smith, No. 06-4885, 2008 WL 1816564, *4 (4th Cir. Apr. 23, 2008) (unpublished) (affirming downward variance to 24 months from Guidelines range of 78 to 97 months for 18 U.S.C. § 2252(a) conviction because district court properly counterbalanced seriousness of offense against defendant's personal characteristics); see also United States v. Grossman, 513 F.3d 592, 598 (6th Cir. 2008) (affirming downward variance to 66 months from recommended Guidelines sentence of 120 months for § 2252(a) conviction);

United States v. White, 506 F.3d 635, 645-49 (8th Cir. 2007) (affirming downward variance to 72 months from Guidelines range of 108 to 135 months for two § 2252(a) convictions); but see United States v. Pugh, 515 F.3d 1179, 1194 (11th Cir. 2008) (vacating non-custodial sentence for §§ 2252(a), 2256(8)(A) convictions where Guidelines range was 97 to 120 months).

That is not to say that deviations from the Guidelines do not require appropriate justification. For example, sentences that vary from the Guidelines "based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations" will require close scrutiny. See Kimbrough, 128 S. Ct. at 575 (internal quotations omitted). But where, as here, the court decides to vary from the Guidelines after a careful, reasoned, and reasonable consideration of the § 3553(a) factors, we cannot say the court abuses its discretion.

Accordingly, while this court could conclude a different sentence was reasonable, we cannot exercise the discretion of the district court and "decide de novo whether the justification for a variance is sufficient or the sentence reasonable." Gall, 128 S. Ct. at 602; Muñoz-Nava, 524 F.3d at 1149. Affording the district court due deference on its determination that the § 3553(a) factors, as a whole, justify the variance, we find that the district court's decision was

"reasoned and reasonable," not an abuse of discretion.  <u>Gall</u>, 128 S. Ct. at 602;

<u>Muñoz-Nava</u>, 524 F.3d at 1149.

AFFIRMED.

07-3220, *United States v. Huckins*

**GORSUCH**, Circuit Judge, concurring.


I write separately to emphasize the narrowness of our holding. As the court explains, the government filed its opening brief in this appeal before *Gall v. United States*, __ U.S. __, 128 S.Ct. 586 (2007), was decided. In its brief, the government argued that, under our then-controlling precedent, the district court was obliged, but failed, to offer "compelling reasons" for its sentence given how far it varied from the advisory Guidelines range. *Gall*, however, repudiated the sort of exacting appellate scrutiny advocated in the government's opening brief and once required by our case law. *See United States v. Smart*, 518 F.3d 800, 807 (10th Cir. 2008) (holding that, after *Gall*, "sentencing review may not be based on a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence" (internal quotation omitted)). In his response brief, Mr. Huckins seized on this fact and argued that, under the more forgiving abuse of discretion standard of review announced in *Gall*, we should affirm the district court. After that, the government did, literally, nothing. It did not file a reply brief, it did not submit a Rule 28(j) letter, it did not seek supplemental briefing. The government even waived oral argument. As a result, the government has advanced before us no argument why this case should be reversed under *Gall*, and the government's

failure to contest this appeal under governing legal authority leaves us with no choice but to affirm. *See United States v. Int'l Bus. Machs. Corp.*, 517 U.S. 843, 855 (1996) ("It would be inappropriate for us to []examine . . . without the benefit of the parties' briefing," matters that a party has chosen not to contest.); *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 976 n.2 (10th Cir. 2002) (concluding the court must reverse because the defendant did not contest plaintiff's argument or offer any other basis for the court to affirm). For this same reason, we have no occasion to pass on the question whether, under *Gall*, factors like those presented in this case would be sufficient to sustain a variance of this magnitude in a contested appeal.