**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MOISES DANIEL MORENO,

      Defendant - Appellant,

No. 09-6087
(D.C. No. CR-08-270-HE-1)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, HOLLOWAY** and **HOLMES**, Circuit Judges.

---

Defendant-appellant Moises Moreno was indicted on a single count of possession

of a firearm and ammunition after a former felony conviction, in violation of 18 U.S.C. §

922(g)(1). Mr. Moreno entered a guilty plea to the charge without the benefit of plea

agreement. He was sentenced to a term of 60 months' imprisonment to be followed by

three years of supervised release; he was also ordered to pay a special assessment of

$100.00.

Mr. Moreno now appeals from the sentence imposed by the district court. This

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P.32.1 and 10th Cir. R.32.1.

court has jurisdiction over this appeal by the terms of 28 U.S.C. § 1291 and 18 U.S.C. § 3731.

## I

Mr. Moreno's arrest on the charge of conviction came about as a result of an investigation by the Oklahoma City Police of an armed robbery at a bar on the city's south side. Witnesses at the bar described four robbers, three of whom were said to be Hispanic men. The four suspects had been seen leaving the robbery scene in a white Lincoln. Officers learned that the same car had been stopped earlier in the day, and that Mr. Moreno had been one of the occupants of the car at that time. Later that evening, the same car was stopped again after a report that several Hispanic men had caused some kind of disturbance at a shopping mall. Mr. Moreno was in the car at that time and was arrested for public intoxication.

Officers learned that Mr. Moreno had been living with a relative, and they went to that residence in their investigation of the robbery at the bar. The relative granted permission for the officers to search the room in which Mr. Moreno had been staying, and the officers found a pistol and several types of ammunition. Mr. Moreno was first charged in state court, but that charge was dropped after he had been indicted by a federal grand jury on the present charge.

## II

Mr. Moreno pleaded guilty. The probation office prepared a Presentence Investigation Report (PSR), and the parties were given the opportunity to comment and

object. The government had no objections; Defendant's objections will be noted in the discussion below. Those objections, however, were not directed at the basic determinations under the advisory guidelines of the criminal history category, the offense level, and the resulting recommended guidelines range of punishment, which was 30 to 37 months.

Mr. Moreno's objections[1] were directed to two paragraphs of the PSR (36 and 38) that described two specific instances of "Other Criminal Conduct," which were cited by the PSR as "Factors That May Warrant a Departure" (paragraph 72). Defendant also objected to paragraph 72 and to paragraph 73, which described "Factors That May Warrant a Sentence Outside of the Advisory Guidelines System." Both parties sought a variance from the advisory guideline range in statements filed before the sentencing hearing.

At the sentencing hearing, the prosecution put on additional evidence about four arrests mentioned in the PSR and relied on in the government's Sentencing Memorandum and Motion for an Upward Variance. These arrests had not resulted in convictions and so had not been included in the criminal history section of the PSR. Mr. Moreno's primary contention on appeal is that this evidence was not sufficiently trustworthy.

---

[1]At oral argument, counsel for Mr. Moreno noted that the probation office had deviated from past practice in preparation of the PSR. His objections, instead of being placed in a separate section of the PSR, had been noted as parentheticals after the description of the incidents of other criminal conduct. From our review of the record and from the arguments of counsel, we observe that the district court seems to have been alerted to Defendant's positions in spite of the decision not to devote a separate section of the PSR to them.

The prosecution's presentation at the sentencing hearing consisted of using a single police officer to identify exhibits, which were some photographs of Mr. Moreno with known gang members, police reports concerning the four arrests, and a transcript of a preliminary hearing in state court on one of the charges. Some of the photographs showed Mr. Moreno, who admitted being a member of a gang called the Juaritos, with individuals known to have leadership roles in the gang and criminal histories including felony convictions.

We will briefly summarize the police reports that were listed in the government's motion for upward variance and later introduced in evidence by the government, over Defendant's objections, at the sentencing hearing. The dates listed are the dates of the incidents.

*May 6, 2008.* A police officer reported that he had been sitting in his patrol car when he noticed three young men in the alley behind a closed business. The three went behind a garbage dumpster and then emerged, arousing the officer's suspicion. The officer looked behind the dumpster and found a pistol. After a second officer had responded to his call for assistance, the three men were arrested. Defendant was one of the three. All three were known gang members, and one of them had a recent felony conviction for assault and battery on a police officer. Each of the three denied possession of the pistol, which was later determined to have been stolen. No charges were filed, according to the PSR, because the state had no evidence as to which of the three arrested men had been in possession of the pistol.

*October 8, 2006.* Police investigated a drive-by shooting. Several shots had been fired at a house where a member of a rival gang lived with his parents and other relatives. Two witnesses identified Defendant as one of the shooters. At the sentencing hearing in the present, federal case, the government also introduced in evidence the transcript of a preliminary hearing in state court; Defendant and two others were ordered held for trial on charges of assault with a deadly weapon at the conclusion of that hearing, based on a finding of probable cause by the state judge that they had participated in the drive-by shooting described. The PSR notes that the case was dismissed more than a year after it had been filed "pending further investigation." The PSR includes this parenthetical note regarding this incident: "The defendant, through counsel, has indicated that this was also a seriously contested charge as illustrated by the date of the alleged offense (October 8, 2006) and the dismissal on March 31, 2008."

*August 15, 2004.* Two officers were patrolling a neighborhood where there had been gang activity and were in particular watching the residence of a known Juaritos gang member, a house where a drive-by shooting had been reported a few days earlier. Shortly before midnight, the officers drove by that residence and noticed a man standing alone, in the dark, beside a parked car. The officer thought that the man, who turned out to be Mr. Moreno, was acting as a look-out. The man seemed to notice the officers because they saw him pull something out of the waistband of his pants and hand it to someone inside the parked car. The officers approached, frisked Defendant and found a pistol magazine in his pocket. The woman who was in the parked car told the officers that Mr. Moreno

had given her the pistol when he saw the officers, and the pistol was found under the driver's seat of the car. Mr. Moreno was charged with transporting a loaded firearm in a vehicle. The case was dismissed at the request of the state, according to the PSR, which also says that the reason for the request to dismiss was that the officers had not seen Mr. Moreno with the gun, nor had they seen him in the vehicle.

*November 19, 2003.* Police investigated a reported incident of shots fired from one car at another. Members of a rival gang were in a white car that had stopped for a traffic light. A green Ford Explorer pulled up behind them and two men got out. One of the two men, whom they recognized as a Juaritos member, threw a brick at the rear window of the white car while the second man hit one of the side windows with a hammer. The white car drove away and the Explorer followed it. Occupants of the white car reported that the first Juaritos member fired a pistol at them, while Mr. Moreno fired a rifle from the Explorer. Two occupants of the white car were hit and were later treated at a local hospital. Mr. Moreno was charged with two counts of shooting with intent to kill, *inter alia*. The case was later dismissed at the request of the state due to uncooperative witnesses, according to the PSR. The PSR also includes, in a parenthetical note, the defense position:

> [T]his was a seriously contested charge. Mr. Moreno had absolutely nothing to do with the offense. The shooting occurred while Mr. Moreno was at work. Mr. Moreno's attorney [apparently the reference is to the attorney in the state case that was filed in 2004] obtained records from Mr. Moreno's employer demonstrating Mr. Moreno was at work. Surveillance videos obtained from the employer showed Mr. Moreno was at work when the shooting occurred.

At the conclusion of the sentencing hearing, the district judge indicated that he was persuaded by the government's evidence that an upward variance from the advisory guidelines range would be appropriate in view of the statutory goals of sentencing set out in 18 U.S.C. § 3553(a). The judge stated:

> Well, in this case, as in every case, I start by considering the recommendations of the Federal Sentencing guidelines. . . . .
> The presentence report does suggest the possibility that an upward variance here may be appropriate on the basis that the criminal history does not sufficiently reflect the seriousness of the criminal conduct involved, and I believe that based on the evidence that's been offered and the information in the report, that that is an appropriate suggestion. It does appear to me that the nature and extent of the criminal conduct by Mr. Moreno is sufficiently significant that it warrants a sentence in excess of the statutory guidelines.
> . . . . [I]t does seem to me that the evidence that I've heard with respect to the . . . involvement in drive-by shootings and the gang-related activity that is not disputed here does inform in a substantial way the Court's judgment about how serious to treat the matter of the possession of a firearm, which is, of course . . . the underlying offense . . . .
> The record reflects that the defendant has been involved in a significant amount of criminal activity. . . . . [T]he more significant criminal history, of course, relates to drugs and guns and the testimony with respect to the drive-by shootings and so on that is considerably more serious than what we often see in these sorts of cases.
> So it does seem to me that the nature of the defendant's criminal history and his activities require a sentence in excess of the guideline range.

As noted, the judge went on to impose a sentence of sixty months' imprisonment, going above the advisory guideline range of 30 to 37 months.

### III

On appeal, Mr. Moreno contends that his sentence is both procedurally and substantively unreasonable. As to substantive unreasonableness, however, counsel has

offered only a bare contention, without supporting argument or authority. Thus, that issue has not been properly raised and need not be considered. It must not be inferred, however, that Mr. Moreno has been prejudiced by this inadequate presentation. The appellate argument is focused on procedural reasonableness and, more specifically, is an attack on the reliability of the evidence on which the district court relied in reaching the sentence. Given the gravity of the conduct reflected in the evidence presented at the sentencing hearing and the deferential abuse of discretion standard of review that applies to the substantive reasonableness of a sentence,[2] Mr. Moreno would have an extraordinarily heavy burden to convince this court that the sentence was substantively unreasonable unless he were to prevail on his procedural attack on the reliability of the evidence. And, if he were to succeed in that attack, that alone would require us to remand the matter for re-sentencing.

Mr. Moreno does assert that his sentence is procedurally unreasonable. "Procedural reasonableness involves using the proper method to calculate the sentence." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007).

Mr. Moreno does not appear to argue that the district court failed to follow Fed. R. Crim. P. 32(i)(3)(B), which requires the sentencing judge to make a finding as to each controverted matter in the PSR or else to state that the controverted material will not be considered in the sentencing decision. *See, e.g., United States v. Pedraza*, 27 F.3d 1515, 1530 (10th Cir. 1994). This case does not present a textbook example of either plainly

---

[2]*See United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008).

stated objections by the defense (which as noted *supra* may be the result of the procedure employed by the probation office in preparation of the PSR) or clearly stated findings by the district court.

Nevertheless, it clearly appears that the district court understood that Defendant had objected to the two noted paragraphs of the PSR, as reflected in the colloquy at the sentencing hearing. Further, Defendant seems to treat the sentencing judge's rather general comments (quoted *supra*) as if they were specific findings that the government had carried its burden of proof on the contested matters.[3] We review such underlying findings of facts by the sentencing court only for clear error. *See United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008). As Mr. Moreno recognizes, the district court may rely on hearsay evidence, as the court did in this case, so long as the evidence manifests minimal indicia of reliability. *See id.* at 1296 & n.4.

Mr. Moreno contends that the evidence used to show that he was involved in the incidents reflected in the police reports was not sufficiently reliable. He also suggests that the findings of the district court that he participated in these incidents are clearly erroneous.

We have previously upheld a sentencing enhancement based on a finding of

---

[3]As shown in the comments of the district judge quoted *supra*, the judge referred more than once to drive-by shootings in the plural. Thus, defense counsel's understanding of the court's comments as findings that he had participated in the events underlying those arrests appears soundly based. And given the likely impact of those findings on the judge's ultimate decision, it does seem that remand for more clearly articulated findings would, in this case, be a hollow formality.

participation in conduct for which the defendant had not been convicted when the evidence to support the finding included a police report. *Cook*, 550 F.3d 1292. In that case, the evidence also included an affidavit of the officer who had prepared the police report, but that affidavit reflected no personal knowledge of the conduct at issue but was, it appears, only another compilation of the hearsay statements included in the report.

We found the evidence insufficient to support a finding made in the sentencing phase of a criminal matter in *United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995). In that case, the sentencing judge had found, based on a preponderance of the evidence, that Mr. Fennell had committed the crime of felonious assault by firing a gun at his girlfriend. The only evidence to support that finding was the probation officer's account of a telephone interview with the girlfriend. We noted, however, that the circumstances of this interview left the probation officer with no opportunity to observe the girlfriend's demeanor or to form any opinion as to her veracity. Our opinion made reference to some unspecified evidence (perhaps a police report on the incident in question) that suggested that the gun had been fired during an altercation between Mr. Fennell and his girlfriend, but that evidence did not support a finding of felonious assault, we said, particularly in light of the fact that Mr. Fennell had initially been charged in state court with misdemeanor assault following the incident. The record, we said, tended to "undermine, rather than buttress, confidence in the girlfriend's hearsay statement." 65 F.3d at 813.

By contrast, in *Cook* the officers had personally interviewed witnesses and found corroborating accounts of the incident in question. *See Cook*, 550 F.3d at 1296. This

case is closer to *Cook* than to *Fennell*.

For example, in the two arrests of Mr. Moreno that did not involve discharge of a firearm, he was apprehended at the scene and a firearm was found. Although the evidence in those cases was deemed by state authorities to be too weak to pursue, at a minimum the evidence of these two incidents showed that Mr. Moreno was associating with gang members who possessed firearms.

As to the two arrests that involved charges of assault by use of a firearm, in the latter of the two incidents the case went to preliminary hearing, and the transcript of that hearing was introduced in evidence at the sentencing hearing. The sole witness at the hearing was a rival gang member who testified that he had been walking on the street when a car pulled up, and at least two men began shooting at him. The witness testified that he saw Mr. Moreno from a distance of a few feet and recognized him because he had been previously acquainted with him. After the witness had been cross-examined by three attorneys representing the defendants, the state judge made a probable cause finding.

We hold that this evidence met the low standard applicable at the sentencing phase. Accordingly, the district court's finding was not clearly erroneous.

As to the remaining incident, that of November 19, 2003, the police reports admitted in evidence at the sentencing hearing reflected, *inter alia*, that one police officer had at least two interviews with one of the victims of that shooting. This officer later submitted a sworn affidavit in support of an application for a warrant in which the officer

stated that the victim had identified Mr. Moreno as the man who had fired a rifle at his vehicle.

As noted, Mr. Moreno did not submit any evidence at the sentencing hearing. The record thus reveals no support for the assertion that the attorney who had represented Mr. Moreno on this charge in state court had a surveillance video that would have shown that Mr. Moreno had been at work at the time of that incident. Nor does the record reveal whether efforts were made to locate the videotape or to contact the lawyer from the state court case.[4] The source for this assertion is unidentified.

We find that the sworn affidavit of the officer relating the victim's identification of Mr. Moreno as one of his assailants meets the standard of minimum indicia of reliability. It follows that there was no error in relying on the evidence and that the finding based on that evidence was not clearly erroneous.

In sum, we find as to each of the four arrests that the evidence proffered by the government met the low standard of minimal indicia of reliability and that the district court's findings based on that evidence were not clearly erroneous.

---

[4]Of course, it would not be surprising if the video, assuming that it existed, had not been saved, since the state charges had been dismissed more than four years before Mr. Moreno's arrest on the current charge. But for the reasons explained in the text, there is such a dearth of information about the alleged video that it would be speculative to find that it had ever existed.

**Conclusion**

The judgment of the district court is affirmed.

IT IS SO ORDERED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge