**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

TERRANCE LYNN MCGUIRE,

      Defendant–Appellant.

No. 10-6102
(D.C. No. 5:09-CR-00283-M-1)
(W. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

      Terrance Lynn McGuire pled guilty to kidnapping and transporting the victim in interstate commerce in violation of 18 U.S.C. § 1201(a)(1). The district court sentenced McGuire to a term of 500 months' imprisonment, a sentence more than 14 years above the range recommended by the United States Sentencing Guidelines. McGuire appeals his sentence, arguing that it is substantively unreasonable. Exercising jurisdiction under

---

      [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

**I**

On January 18, 2007, M.M.G. was riding her bicycle near her home in Texhoma, Oklahoma, collecting money for a charity. She was ten years old at the time. McGuire approached the child and asked for directions. M.M.G. told McGuire that she was unfamiliar with the area, but that her grandfather might know the location. McGuire offered to contribute toward M.M.G.'s fundraising efforts if she showed him where her grandfather lived. M.M.G. agreed and got into McGuire's car.

McGuire drove M.M.G. to a rural area, threatened her with a knife, and sexually assaulted her. McGuire then restrained the child and drove her to his home in Canyon, Texas. He placed M.M.G. in the trunk of his car while he waited for his wife to leave for work. Eventually, McGuire brought M.M.G. into the house and attempted to rape the child again. Later, he put M.M.G. in a closet and sexually assaulted her for a third time.

Eighteen hours after he abducted M.M.G., McGuire released her in Clovis, New Mexico. Authorities arrested McGuire more than two years later when his estranged wife, to whom he had confessed kidnapping M.M.G., reported him to the FBI.

McGuire pled guilty to one count of kidnapping and transporting a minor across state lines, a crime punishable by a term of imprisonment from twenty years to life. McGuire's Presentence Investigation Report ("PSR") recommended three sentencing enhancements: two levels because he used a knife, six levels because the kidnapping involved sexual exploitation, and two levels because the victim was vulnerable by virtue

of her young age.  See U.S.S.G § 2A4.1(b)(3); § 2A4.1(b)(5); § 3A1.1.  McGuire's offense level was decreased by three levels for accepting responsibility.  See U.S.S.G. § 3E1.1(a); § 3E1.1(b).  His final adjusted offense level corresponded to an advisory range of 262 to 327 months.

The PSR also described the kidnapping and provided background information about McGuire.  It revealed that police had investigated McGuire for allegedly stalking two ten-year-old girls in 2005.  In addition, the PSR indicated that McGuire had on at least three occasions sexually molested his fifteen-year-old sister-in-law while she slept.  McGuire did not object to the inclusion of these incidents in the report.

At a sentencing hearing, the district court heard testimony from M.M.G. and her family describing how the kidnapping had disrupted their lives.  More than two years after the kidnapping, M.M.G. continued to struggle with severe mental health issues.  She had nightmares about being kidnapped again and was afraid to go outside after dark or be alone with men, even her own father.  She had been frequently absent from school, her grades had dropped, and she had begun to struggle in social settings.  M.M.G's family also suffered greatly:  They had to relocate to a different town to avoid attention, M.M.G.'s father had attempted suicide, her mother lost her job, and her siblings suffered from anxiety and depression.

The sentencing court also considered testimony from McGuire, who expressed remorse for his actions.  In addition, the court received a flood of letters from McGuire's family and friends.  These letters described McGuire as the proud father of two small

children, a hard worker, a good athlete, and a devout Christian.

Based on detailed oral findings, the district court sentenced McGuire to 500 months' imprisonment—more than 14 years above the advisory Guidelines range. On appeal, McGuire challenges the substantive reasonableness of this sentence.

**II**

**A**

We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Smart, 518 F.3d 800, 802 (10th Cir. 2008). We must affirm unless the sentencing court's decision exceeds the bounds of reasonable choice given the totality of the circumstances and the factors set forth in 18 U.S.C. § 3553(a). United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008). This level of deference is appropriate because a district court has "an unquestionable institutional advantage over an appellate court" in determining the length of sentence warranted by the facts of an individual case. Id.

In the past, this court conducted a more rigorous substantive reasonableness review when a district court imposed a sentence outside of the recommended Guidelines range. We have since eschewed that approach. See Smart, 518 F.3d at 809 (rejecting, pursuant to Gall v. United States, 552 U.S. 38 (2007), excessive deference to the Sentencing Commission's "macro-level § 3553(a) determinations" at the expense of deference to the "micro-level determinations reserved for the district courts"). Although we continue to require a "more significant justification" for substantial departures from

– 4 –

the Guidelines, see Gall, 552 U.S. at 50, we no longer use the "percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Smart, 518 F.3d at 807. Nor do we require a district court to "provide 'extraordinary' facts to justify [a] statutorily permissible sentencing variance." Id.

Even so, a sentencing judge's discretion is not unbounded. District courts must pay more than lip service to the sentencing factors. They must also adhere to the substantive mandate of the sentencing statute by imposing a term of imprisonment that is "sufficient, but not greater than necessary" to facilitate the statute's goals. 18 U.S.C. § 3553(a). Such restraint ensures fairness to and between defendants, safeguards our system's legitimacy, and avoids imposing on taxpayers the costs of unnecessary incarceration. Nevertheless, when a district court determines in a "reasoned and reasonable" decision that a sentence is no greater than necessary, we cannot say that the court abused its discretion. United States v. Muñoz-Nava, 524 F.3d 1137, 1149 (10th Cir. 2008).

**B**

At McGuire's sentencing, the district court explained that it had "considered the advisory guideline range" and "all of the factors" under § 3553(a) before determining that 500 months was appropriate punishment. The court then justified its decision to impose a sentence outside of the Guidelines by highlighting several aspects of McGuire's offense conduct.

The court repeatedly noted the victim's "innocence," vulnerability, and young age.

– 5 –

The court found that McGuire approached the victim "boldly, and with a deviant purpose." Describing the kidnapping as the "ride from hell," the court also emphasized McGuire's cruel use of restraints during the kidnapping. The district court also discussed in detail McGuire's multiple sexual assaults against M.M.G., and focused on the physical injuries McGuire caused. Finally, the court found that the victim's life was "forever changed because of the bold and deviant conduct" of McGuire. It explained that

> [t]he impact of this Defendant's bold and deviant conduct can never be measured. The impact of that conduct on this ten year old, now 13, can never be fully corrected, measured or determined. The impact on her family, even [the family] of the Defendant, everyone is impacted, to some immeasurable extent because of this very bold and deviant conduct, which was merely for sexual gratification.

Considering the "totality" of these circumstances, the court concluded that a 500 month sentence met the objectives set forth by Congress in § 3553(a). Such a sentence was necessary to "reflect the seriousness of th[e] offense," to "promote[] respect for the law and provide[] just punishment for the offense," and to "provide the Defendant time to avail himself of . . . correctional treatment in the most effective manner." See 18 U.S.C. § 3553(a)(2)(A), (D). The court especially emphasized that the 500 month sentence would "protect[] the public from any further crimes" committed by McGuire. See § 3553(a)(2)(C). "There never needs to be another little girl that receives a ride from hell . . . because of the desire for sexual gratification of this defendant," the court stated. Finally, the court noted that the upward variance would avoid "sentencing disparities among defendants with similar records, who have been found guilty of similar conduct."

See § 3553(a)(6).

### III

McGuire contends that the district court placed undue emphasis on two factors already incorporated into the Guidelines recommendation: the defendant's sexual exploitation of M.M.G. and her young age. Our case law contemplates, however, that the Sentencing Commission's generalized calculation and a district court's individualized assessment will "overlap." Smart, 518 F.3d at 809. District courts may "contextually evaluate each § 3553(a) factor, including those factors the relevant guideline(s) already purport to take into account, even if the facts of the case are less than extraordinary." Smart, 518 F.3d at 808.

District courts' individualized assessments are necessary because the Guidelines adjustments merely approximate offense characteristics. The enhancement McGuire received for sexual exploitation of the victim, for example, covers a range of conduct. It does not distinguish a kidnapper who sexually assaults his victim once, from one—like McGuire—who does so three times. U.S.S.G § 2A4.1(5). Moreover, the Guidelines do not address the interaction between conduct that result in adjustments. In this case, the district court was especially concerned with the particularly heinous interplay of the "sexual exploitation" and "vulnerability" factors—that McGuire sought sexual gratification from a child. Given the immeasurable harmful effects that sexual abuse has on prepubescent children, we cannot say that this concern was unreasonable. See Kennedy v. Louisiana, 128 S. Ct. 2641, 2677-78 (2008) (Alito, J. dissenting) ("Long term

– 7 –

studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways no just or humane society can tolerate.").

McGuire next takes issue with the district court's statement that a 500 month sentence would avoid sentencing disparities among defendants found guilty of similar conduct. See 18 U.S.C. § 3553(a)(6). McGuire's concern is twofold: First, he argues that the institutional edge a district judge normally possesses for identifying likely disparities was reduced in this case, because federal judges typically see very few kidnapping cases. Second, McGuire contends that because his offense conduct is typical of kidnappings and because courts rarely vary upwards when sentencing kidnappers, the district court's imposition of an above-guideline sentence actually exacerbated sentencing disparities.

The statistics McGuire offers, however, fail to bear out the latter conclusion. To demonstrate that his kidnapping offense conduct was typical, McGuire points to a study showing that in subset of 115 "stereotypical" child kidnappings, 49 percent involved sexual assault and 43 percent involved children 11 or younger. David Finkelhor et al., U.S. Dep't of Justice, Nonfamily Abducted Children: National Estimates and Characteristics 7, 10 (2002). [1] These statistics do not reveal, however, the percentage of all kidnappings that involve sexual assault of prepubescent children or even how

---

[1] Available at https://www.ncjrs.gov/pdffiles1/ojjdp/196467.pdf.

frequently kidnappings of children under age eleven involve sexual assault.[2]  We cannot,

therefore, determine from these statistics whether McGuire's offense conduct was typical.

Nor do McGuire's data show that district courts usually impose sentences within or

below the Guideline range for conduct similar to McGuire's.  See U.S. Sentencing

Comm'n, Sourcebook of Federal Sentencing Statistics, tbl. 28.  Although the official data

show that courts tend to vary upward from the Guidelines in only a few kidnapping cases

per year, see id., these numbers do not shed light on the particular facts driving those

sentencing decisions.  Thus, McGuire has not shown whether he more closely resembles

defendants receiving upwardly variant sentences or those receiving within- or below-

guideline sentences.

It may well be that the sentencing court had less basis for comparison in

McGuire's case than in many federal cases.  We are disinclined, however, to start down a

path that requires us to recalibrate our review depending on the sentencing court's

familiarity with each particular offense.  To do so is unnecessary here, moreover, because

the district court appears to have relied on other sentencing factors more strongly than

18 U.S.C. § 3553(a)(6), particularly the seriousness of the offense and protection of the

public.  See § 3553(a)(2)(A), (a)(2)(C).  The district court's decision to weigh some of

the sentencing factors more than others, of course, merits our deference.  See Smart, 518

---

[2] Moreover, McGuire's crime does not qualify as a "stereotypical kidnapping" under the study's rubric.  See Finkelhor, supra, at 2 (listing as a "stereotypical kidnapping" characteristic that the child is "held for ransom or abducted with intent to keep the child permanently, or killed").

F.3d at 808.

Finally, McGuire argues that the district court failed to give adequate weight to evidence that he is more redeemable than the usual kidnapping defendant. As an initial matter, we are not convinced that this mitigating evidence reflects as favorably on McGuire's prospects for rehabilitation as he assumes. While McGuire received a large number of letters attesting to his "moral fortitude," the epistlers appear to have held McGuire in similarly high esteem before and during the time he kidnapped and sexually abused M.M.G. Far from reassuring us that McGuire has reformed following criminal conduct, these letters suggest that McGuire led a double life. That said, some mitigating evidence points more firmly in McGuire's favor, such as his expressed remorse, his confession to his wife, and that he released M.M.G. within 24 hours. Were we in the position of the sentencing court, those factors might have inclined us to find a lower sentence adequate to meet the goals of § 3553(a).

We do not, however, find ourselves in the position of the sentencing court. A sentencing judge "sees and hears the evidence, makes credibility determinations, has full knowledge of the facts, and gains insights not conveyed by the record." Gall, 552 U.S. at 51. Accordingly, that we might "reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." Id. Given the egregiousness of McGuire's conduct, we cannot say that the district court abused its discretion when it imposed a 500 month sentence.

## IV

For the foregoing reasons, we **AFFIRM**.  The Appellee's motion to seal its response brief is **DENIED**.


Entered for the Court


Carlos F. Lucero
Circuit Judge