**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**October 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

―――――――――――――――――

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BILLY JACK WAITMAN,

    Defendant - Appellant.

No. 24-6240
(D.C. No. 5:23-CR-00498-J-1)
(W.D. Okla.)

―――――――――――――――――

## ORDER AND JUDGMENT*

―――――――――――――――――

Before **McHUGH**, **EID**, and **FEDERICO**, Circuit Judges.

―――――――――――――――――

Billy Waitman assaulted and strangled his dying mother as she lay in her hospice bed. She died three days later. Waitman was sentenced to 10 years' imprisonment for assault resulting in serious bodily harm – a sentence that was roughly four times the advisory sentencing guidelines

―――――――――

\* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

range for his case. On appeal, Waitman challenges this sentence as being substantively unreasonable. We disagree. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

In July 2023, Pam Waitman was nearing the end of a long battle with emphysema. She was 72 years old and had been in home hospice care for three years, and she could not breathe without the help of an oxygen machine. At that time, Pam's son, the defendant, Billy Waitman (hereinafter Waitman will refer only to the defendant), lived in her home and helped care for her.

Waitman is also ill. He has a long history of alcohol abuse and was diagnosed with liver cirrhosis in 2020. He has a limited life expectancy without a liver transplant. At one point, Waitman was slated to receive a liver transplant, but he was removed from the transplant list because he refused to stop drinking.

Waitman has claimed that he and his mother were close, and that he acted as her caregiver as they were both experiencing their terminal illnesses. However, testimony from other members of his family paints a different picture. Waitman's brother, Paul Waitman, stated that Waitman was usually drunk and hardly ever took care of Pam. Waitman was unhappy living with Pam and repeatedly told Paul that she couldn't live with him

2

anymore. Waitman's sister, Susan Wyant, stated that he told her at one point, "[i]f you don't get her out of here, I'm going to choke her to death." R. III at 12.

The night of July 24, a hospice nurse arrived at Pam's home because it was reported that she was having trouble breathing. That day, Pam requested morphine for the first time. In prior conversations with her family, she had said that if she ever asked for morphine that it meant that she was close to death. The nurse reported that Waitman was drunk at the time and appeared angry at his mother. Waitman also told the nurse that his mother was taking too long to die and that he was tired of taking care of her. After the nurse left, she called Paul to tell him that Pam was in grave condition, and Paul said he would go to Pam's house. The nurse also scheduled a meeting with her supervisor to try and get Pam removed from the home because she felt it was an unsafe residence.

Later that night, law enforcement was called to Pam's home. Paul told law enforcement that when he arrived at the home, he found Waitman on top of their mother, choking her. Waitman then lunged at Paul and tried to hit him, but Paul was able to restrain Waitman until law enforcement arrived. Pam suffered severe injuries, including having much of the skin on one of her arms ripped off. Her oxygen machine had also been unplugged.

Waitman told law enforcement that he was not trying to hurt his mother. He claimed that she was acting "erratic" because of a bad reaction to the morphine, and that he was trying to restrain her and calm her down so that she didn't injure herself. *Id.* at 13–14.

Waitman was taken to jail while his mother was taken to the hospital. She was soon released to a nursing home, where she died on July 27. Family members and a nurse reported that, before she died, Pam was distressed and said that Waitman had tried to kill her. An autopsy determined that, despite Pam's evident injuries from the assault, she had died of natural causes from her emphysema.

## II

A grand jury returned an indictment charging Waitman with attempted murder under 18 U.S.C. §§ 1113, 1153 (Count 1) and assault resulting in serious bodily injury under 18 U.S.C. §§ 113(a)(6), 1153 (Count 2). Waitman entered a guilty plea on Count 2, acknowledging that he committed an "[a]ssault resulting in a serious bodily injury" punishable by "imprisonment for not more than ten years[.]" 18 U.S.C. § 113(a)(6).

Waitman's Presentence Report (PSR) recommended that Waitman be given a total offense level of 18 and a criminal history category of I. Based on these recommendations, the PSR calculated an advisory sentencing guidelines range of 27 to 33 months' imprisonment. The PSR also calculated

that, if Waitman had been convicted of both counts as charged, his guidelines range would have been 78 to 97 months.

The Government moved for an upward variance from the guidelines range and asked the district court to impose the maximum possible sentence: ten years' imprisonment. At Waitman's sentencing hearing, the Government stated that Waitman's animosity towards his mother and his desire to kill her so that she wouldn't be a burden to him justified a variance. The assault had also caused Waitman's family to go through a traumatic experience and robbed Pam of the ability to be at peace before her death. The Government argued that Waitman's explanation of his motive – that he was merely trying to restrain his mother – was not credible given the circumstances of the assault and statements from nurses and Waitman's family.

Waitman asked for the court to impose a sentence within the guidelines range. At sentencing, Waitman's counsel told the court that, despite his actions while intoxicated, Waitman cared about his mother, did not deliberately intend to kill her, and had accepted responsibility for hurting her. Then, Waitman argued that a guidelines sentence was justified by his poor health. Waitman's counsel stated that Waitman was "not likely to survive a ten-year sentence" and that he could not receive sufficient medical care, namely a liver transplant, while in prison. R. III at 20–21.

5

Before imposing a sentence, the district court stated that it considered all the sentencing factors outlined in 18 U.S.C. § 3553(a), as well as the "statements of the parties, the plea agreement, the [PSR], the nature and circumstances of the offense, and the history and characteristics of the defendant." *Id.* at 23. The district court then addressed Waitman's "actions against a helpless, dying, elderly woman" that it found "unconscionable and warranting a more robust sentence . . . than what is requested or reflected in the guidelines." *Id.* at 25. Further, the district court stated that it did not "believe the guidelines constitute just punishment nor do they protect the public nor do they reflect the seriousness of [Waitman's] offense." *Id.* The district court also acknowledged Waitman's liver disease but found that while it "has been afforded meaningful consideration," it was not dispositive, particularly because Waitman is ineligible for a transplant due to his own refusal to stop drinking. *Id.* For these reasons, the district court granted the Government's motion for an upward variance and imposed the statutory maximum sentence of ten years' imprisonment.

Although Waitman generally waived his right to appeal his sentence as part of his plea agreement, he did not waive his right to challenge the substantive reasonableness of a sentence that is above the guidelines range. Waitman thus timely appealed.

6

## III

## A

An appeal challenging "substantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (internal quotation marks omitted). Section 3553(a) requires sentencing courts to consider seven factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence to promote the goals of the justice system such as "respect for the law[,]" "just punishment[,]" "deterrence to criminal conduct[,]" "protect[ing] the public[,]" and rehabilitation for the defendant. 18 U.S.C. § 3553(a)(1), (2).

When reviewing a sentence for reasonableness we give "deference to the district court under the familiar abuse-of-discretion standard." *United States v. Garcia*, 946 F.3d 1191, 1211 (10th Cir. 2020) (citation modified). To demonstrate an abuse of discretion, the defendant must show that the sentence was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quoting *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017)).

When reviewing a variance from a guidelines sentence, "we 'consider the extent of the deviation' but give 'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Huckins*, 529 F.3d at 1317 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). As part of granting deference, we do not ourselves "examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008). "That is to say, we recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). "We cannot reverse simply because we might have reasonably arrived at a different sentence." *Huckins*, 529 F.3d at 1317.

**B**

Waitman argues the district court unreasonably weighed the § 3553(a) sentencing factors in deciding to impose an above guidelines sentence. He states that the district court relied entirely on one factor – the nature and circumstances of his offense – and failed to adequately consider his mitigating evidence. He offers three mitigating facts that he thinks the district court should have given greater consideration: (1) his failing health,

(2) his lack of criminal history, and (3) the district court's variance exceeded his guidelines range even had he been convicted of both counts as originally charged.

We will address each of these arguments in turn, but we conclude that none of them is compelling enough for us to find Waitman's sentence substantively unreasonable. The district court considered each of these mitigating factors; it just may not have given these factors the weight that Waitman thinks they deserve. Given the shocking circumstances of Waitman's crime, assaulting his elderly mother while she lay in bed under hospice care, the district court acted within the realm of rational choices by granting an upward variance and did not abuse its discretion.

First, Waitman argues that "[t]he upward variance is substantively unreasonable, in part, because of [his] terminal condition." Op. Br. at 18. Waitman cites a medical declaration from his doctor stressing his severe illness and argues that an above guidelines sentence does nothing to protect the community given his physical condition. But evidence of Waitman's illness, including his doctor's declaration, was included in the PSR and was considered by the district court. And the district court explicitly addressed Waitman's health when imposing a sentence, assuring Waitman that it "has been afforded meaningful consideration[.]" R. III at 25. The district court simply decided that his health was "unpersuasive" as a mitigating factor

9

given the nature and circumstances of his crime and the fact that Waitman does not qualify for a liver transplant because of his own failure to stop drinking. *Id.* Since we do not "examine the weight" the court gives to such factors, *Smart*, 518 F.3d at 808, we will not question the weight the district court chose to give, or not give, to this evidence. Rather, the record supports that the district court duly considered Waitman's medical condition prior to announcing a sentence.

Next, Waitman argues that the district court "also failed to adequately consider [his] lack of a significant criminal history, which the advisory guideline range did adequately include." Op. Br. at 19. While it is true that the district court "made no mention of [] Waitman's minimal criminal history" at his sentencing hearing, *id.*, that does not mean that it failed to consider his lack of criminal history. This piece of Waitman's history was described in the PSR, which the district court considered. Likewise, Waitman's lack of significant criminal history is a part of his "history and characteristics" under § 3553(a)(1). It was also incorporated into his guidelines range, which the district court considered before deciding on an upward variance. Again, Waitman's challenge is really to the weight the district court gave this fact, but this is not a decision that we will second-guess given the nature and circumstances of this case and the district court's explanation for its sentence.

Finally, Waitman argues that his 120-month sentence was unreasonable because it exceeded even the guidelines range of 78 to 97 months Waitman would have received if he had been convicted of attempted murder as well as assault. He takes issue with the district court not explaining "how this guideline range would have been inadequate to comply with the goals of sentencing." Op. Br. at 20.

But Waitman cites no authority to show that the district court must consider, much less explain, the meaning or relevance of alternative guidelines ranges based on a charged offense that was dismissed. The district court's consideration of the sentencing factors is not required to perfectly track the guidelines. *See United States v. Gross*, 44 F.4th 1298, 1304 (10th Cir. 2022) ("[D]istrict courts have broad discretion to consider particular facts . . . even when those facts are already accounted for in the advisory guidelines range."). As it was required to, the district court considered Waitman's actual guidelines range of 27 to 33 months and determined that a sentence within that range was not sufficient.

## IV

We acknowledge that the district court's sentence was a significant upward variance. Such variances require the district court to offer a greater justification for its sentencing decision. *See United States v. Lente*, 759 F.3d 1149, 1158 (10th Cir. 2014) ("A 'major' variance should have 'a more

11

significant justification than a minor one.'" (quoting *Gall*, 552 U.S. at 50)). The district court followed this principle by adequately explaining its justification for an upward variance under the § 3553(a) factors.

However, we cannot conclude that it was unreasonable for the district court to impose a significant upward variance when the district court explained how it weighed the nature and circumstances of the offense against the mitigating evidence and arguments presented by Waitman. *See United States v. McCrary*, 43 F.4th 1239, 1241–42 (10th Cir. 2022) (affirming a "forty-eight-month sentence [that] was four times higher than the high end of the advisory guideline range" because the district court concluded that the defendant's "post-offense rehabilitation did not outweigh the fact that the fentanyl [the defendant] distributed resulted in another's death"). Given the circumstances present in this case, the district court did not abuse its discretion.

AFFIRMED.

Entered for the Court

Richard E.N. Federico
Circuit Judge